**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Maurice Robert CARTER,
Defendant-Appellant.**

**No. 79–5282
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

Oct. 5, 1979.

Rehearing Denied Nov. 5, 1979.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

George L. Clapham, Orlando, Fla., for defendant-appellant.

Kendell W. Wherry, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before AINSWORTH, GODBOLD and VANCE, Circuit Judges.

AINSWORTH, Circuit Judge:

Defendant-appellant Maurice Robert Carter was convicted after a jury trial of conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963. Before trial Carter moved to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 48(b) and the Sixth Amendment of the Bill of Rights for deprivation of his right to a speedy trial. After hearing testimony the district court concluded that the delay in bringing defendant to trial was due to defendant's departure from the state where the indictment was returned and further to the limited efforts of the Drug Enforcement Agency and the Florida authorities to locate him. Since the court also found that Carter had failed to show any prejudice as a result of the delay, it denied his motion to dismiss. At trial upon conclusion of the Government's case and again at the close of the trial, the district court denied Carter's motions for judgment of acquittal for lack of sufficient evidence to convict the defendant of conspiracy to import marijuana. We agree with the district court's rulings and affirm the conviction.

At trial, the Government offered evidence to show that in February 1976, John Leslie Head approached Daniel C. Wagner, owner of a charter service, to inspect one of Wagner's boats. Head then offered Wagner $10,000 to use the Sirenia, a retired 83-foot Coast Guard patrol boat, to import marijuana from the Bahamas. Wagner accepted the offer, and after Head had left, Wagner contacted the Florida Department of Law Enforcement, which arranged with Wagner to record telephone conversations with Head concerning the proposed plan. Shortly after that time, Head loaned Wagner $2,500 to overhaul the Sirenia in preparation for the trip. In April 1976 a man who did not identify himself by name boarded Wagner's boat and discussed the $2,500 loan as well as details of the money to be paid to Wagner and his crew to transport the marijuana. He also inspected the boat and told Wagner "they" would be back in touch with him. Wagner identified this man at the trial as the defendant Carter. In May the Sirenia was involved in a marine casualty and as a result was a total loss. Wagner agreed with Head to locate another vessel and arrangements were made to use a boat owned by Keith Heuer,

a friend of Wagner. A listening device was installed in the boat and it was delivered to friends of Head. In July the vessel was seized in Miami, and eight bales of marijuana were found on board.

The Government also introduced a tape recording of a telephone conversation between Head and Wagner during which Head asked Wagner if Carter had been by to see him. This conversation allegedly took place in July 1976. Finally, in November of that year, Wagner and Heuer, who had known Carter since about 1975, saw the defendant in a bar. Heuer testified that Carter came up to him on that occasion and told him to warn Wagner to keep quiet about the marijuana deal.

On November 27, 1978, Carter was arrested pursuant to a one-count indictment on September 15, 1977, by a federal grand jury at Orlando, Florida. At the hearing on January 8, 1979, in support of his motion to dismiss the indictment for lack of a speedy trial, defendant contended that although he had left Florida sometime in early 1977, he had been living openly in Virginia during the 14-month period between his indictment and his arrest and had returned to Florida six times between February 1977 and November 1978. He alleges that he was prejudiced by the delay between indictment and arrest because the principal co-conspirator John Head was tried during that period and another coconspirator George Bowers pleaded guilty, and Carter did not have the benefit of being present at either of these proceedings. At the hearing Carter testified that about six months following his departure from Florida, his former wife

Catherine Carter, who still maintains a residence in Florida, notified him that he was charged in an indictment along with John Head. The defendant upon receipt of that information made no effort to contact the Florida authorities or to surrender himself to federal officers. Following Carter's indictment, agents of the Florida Department of Law Enforcement, in an effort to locate the defendant, contacted Mrs. Carter and periodically observed Carter's former Florida residence. It was not until 14 months following the indictment, however, that an arrest was made.

Appellant contends that he was thus deprived of his right to a speedy trial though he failed to proffer any specific evidence of prejudice to his defense or to his personal rights.[1] In *Barker v. Wingo*, 407 U.S. 514, 530–33, 92 S.Ct. 2182, 2192–93, 33 L.Ed.2d 101 (1972), the Supreme Court enunciated four factors to be considered in making a determination whether there has been a denial of a speedy trial: length of delay, reason for delay, whether defendant asserted his right to speedy trial, and whether he has suffered prejudice as a result of the delay. *See United States v. Edwards*, 5 Cir., 577 F.2d 883, 888, *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). Almost 16 months elapsed between Carter's indictment and his trial.[2] Unless this period of time is found to be "presumptively prejudicial," it is unnecessary to consider the other factors. *United States v. Edwards, supra*, 577 F.2d at 888. In *Edwards*, a 21-month period was held to be presumptively prejudicial where there were no complex factual and legal

1. Carter alleges that "it can be assumed that witnesses who might have been available during the fourteen month period can no longer be found," and that he has, therefore, suffered prejudice in his defense. In the absence of any specific showing of prejudice, no such assumption is warranted.

2. Carter's right to a speedy trial based on the Sixth Amendment was triggered by his indictment since it preceded his arrest. *See Dillingham v. United States*, 423 U.S. 64, 65, 96 S.Ct. 303, 303, 46 L.Ed.2d 205 (1975). Had his con-

tention been made under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, there likewise would be no violation. Under this Act, the time period does not begin to run until defendant has been indicted or has been "ordered held to answer and has appeared before a judicial officer of the court . . . whichever date last occurs." The Act requires that defendant be arraigned within ten days and brought to trial within another sixty days. Since Carter was arrested November 27, arraigned December 5, and tried January 8, the Act was fully complied with.

issues.[3] This court also found that a 15-month delay in a complex conspiracy case was sufficiently lengthy to require consideration of the other factors. *United States v. Avalos,* 5 Cir., 1976, 541 F.2d 1100, 1108, cert. denied, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). We can assume, therefore, that the 16-month delay here is substantial enough to suggest inquiry into the other factors. The delay itself, however, is not sufficient to warrant a finding that the defendant has been denied his Sixth Amendment right. *United States v. Edwards, supra,* 577 F.2d at 888; *United States v. Garza,* 5 Cir., 1977, 547 F.2d 1234, 1235.

 To determine whether a defendant's right to a speedy trial has been violated, the conduct of the Government must be weighed against the conduct of the defendant. *Barker v. Wingo, supra,* 407 U.S. at 430, 92 S.Ct. at 2191–92. Here, the district court found the reasons for the delay to be a result of Carter's deliberate disappearance from Florida and the limited efforts of the law enforcement officials to locate Carter. Though a purposeful attempt to delay the trial to prejudice the defendant or to gain a tactical advantage for itself should weigh heavily against the Government, *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. at 2192, a more neutral reason, such as negligence, does not necessarily tip the scale in favor of the defendant, particularly where the defendant was at liberty and outside the jurisdiction where the indictment was returned. *United States v. Walters,* 5 Cir., 1979, 591 F.2d 1195, 1201.

 It is important to note that Carter failed to assert his right to a speedy trial. Though the *Barker* decision left uncertain the extent of the defendant's burden in this respect, *see* 407 U.S. at 527, 531–32, 92 S.Ct. at 2190, 2192–93, Carter's pretrial silence is a factor which should be weighed in favor of the Government. *United States v. Ed-*

wards, supra, 577 F.2d at 887; *United States v. Garza, supra,* 547 F.2d at 1235. On balance, therefore, we conclude that Carter was not deprived of the right to a speedy trial in violation of the Sixth Amendment and that denial of defendant's motion to dismiss for failure to afford a speedy trial did not constitute an abuse of discretion requiring dismissal pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure.

 With regard to appellant's argument that the Government failed to introduce sufficient evidence to support a conviction of conspiracy, viewed in a light most favorable to the Government,[4] the three incidents of Carter's involvement presented at trial[5] provide substantial evidence to establish beyond a reasonable doubt that a conspiracy existed and that Carter had the requisite knowledge and intent to join the conspiracy. *See United States v. Malatesta,* 5 Cir., 1979, 590 F.2d 1379, 1381; *United States v. Soto,* 5 Cir., 1979, 591 F.2d 1091, 1101 (petition for cert. filed). Finally, in answer to appellant's argument that the Government failed to prove that Carter's visit to the Sirenia was related to the actual boat used to transport the marijuana, we note that under 21 U.S.C. § 963, no overt act is required for conviction of conspiracy, and "it is immaterial that [the defendant] may not have been privy to the details of each aspect of the operation; it is enough that he was aware of the conspiracy's general purpose and scope." *United States v. Bates,* 5 Cir., 1979, 600 F.2d 505, 509.

AFFIRMED.

---

3. 577 F.2d at 888; *see also United States v. Walters,* 5 Cir., 1979, 591 F.2d 1195, 2101.

4. *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974).

5. As noted earlier, Carter discussed plans for the boat and payment of the crew with Wagner, he was mentioned in a conversation between Head and Wagner, and he threatened Wagner.