**Terry Kent RINGSTAFF,
Petitioner–Appellant,**

v.

**Dale HOWARD and The Attorney General of the State of Alabama, Don Siegelman, Respondents–Appellees.**

**No. 87–7573.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 28, 1989.

Janie Baker Clarke, Montgomery, Ala., for petitioner-appellant.

Cecil G. Brendle, Jr., Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before RONEY, Chief Judge, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK, EDMONDSON, and COX, Circuit Judges.

RONEY, Chief Judge:

This appeal is from the district court's denial of habeas relief to convicted murderer Terry Kent Ringstaff. A divided panel of this Court determined that Ringstaff's right to a speedy trial had been violated when the State delayed prosecuting him pending a decision by the Alabama Supreme Court on the validity of Alabama's death penalty statute, a portion of which had been struck as unconstitutional by the United States Supreme Court just nine days after Ringstaff's arrest in this case. *Ringstaff v. Howard*, 861 F.2d 644 (11th Cir.1988). The full court voted to hear this case in banc and vacated the prior panel opinion. *Ringstaff v. Howard*, 861 F.2d at 650 (*in banc*). The in banc court now affirms the denial of relief on the ground that the State could legitimately wait until the critical issue of the continued validity of Alabama's death penalty law was settled. This being so, Ringstaff was required to show he actually suffered from the delay, which he has failed to do.

■ The key to the decision in this case is whether the defendant had to show prejudice from the delay in bringing him to trial. If he had to make such a showing, he loses. If he does not have this burden, he wins. In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court established a four-part balancing test for evaluating claims of the denial of the constitutional right to a speedy trial. The factors to be weighed are: (1) length of delay; (2) reason for delay; (3) defendant's assertion of the right; and (4) prejudice to defendant. *Id.* at 530, 92 S.Ct. at 2191. Under *Barker* the length of the delay must be "presumptively prejudicial" in order to trigger an inquiry

into the other three factors. The defendant does not have to show actual prejudice by delay, however, if the first three factors weigh heavily against the Government. *United States v. Mitchell*, 769 F.2d 1544, 1547 (11th Cir.1985), *cert. denied*, 474 U.S. 1066, 106 S.Ct. 819, 88 L.Ed.2d 792 (1986).

■ In this case, the length of delay was concededly sufficient to require further inquiry. Ringstaff was brought to trial and convicted of murder some 23 months following his arrest, a period which this Court assumes raises Sixth Amendment concerns, although there is no precise time for the constitutional right to a speedy trial to be implicated. *Barker v. Wingo*, 407 U.S. 514, 521, 92 S.Ct. 2182, 2187, 33 L.Ed.2d 101 (1972) ("We cannot definitely say how long is too long in a system where justice is supposed to be swift but deliberate.") The district court held, and the State does not now dispute, that the delay of 23 months was "presumptively prejudicial" and that Ringstaff asserted his speedy trial right five months after he was arrested. Thus, the focus here is on the reason for the delay. If the reason weighed heavily against the Government, defendant would not have to prove prejudice.

Seven of the 23 months are attributable to the defendant's request for a psychiatric evaluation and are excused from the speedy trial computation. *United States v. O'Bryant*, 775 F.2d 1528 (11th Cir.1985). Nine of the remaining 16 months involve a decision by the Government to wait until the Alabama Supreme Court rendered its decision in *Beck v. State*, 396 So.2d 645 (Ala.1980). In that case, the Alabama Supreme Court held that the provision in the State's death penalty statute prohibiting lesser offense instructions—struck down as unconstitutional by the United States Supreme Court in June 1980—could be severed from the rest of the statute. Until the *Beck* decision, the validity of the State's entire capital statutory scheme was in doubt. As the Alabama Court of Criminal Appeals stated, the Government exercised "commendable caution and circumspection rather than rushing ahead" when it chose not to proceed to trial against Ringstaff on

capital murder charges pending a resolution of the issue. *Ringstaff v. State*, 451 So.2d 375, 381 (Ala.Crim.App.1984), *cert. denied*, No. 83–652 (Ala., June 1, 1984). Had the Government pursued the prosecution, it faced the possibility that Ringstaff would have been convicted of capital murder under a statute later determined to be invalid. It would then have been forced to retry Ringstaff, a particularly inefficient use of resources, especially where it is likely that Ringstaff would have been convicted at least of the very same charge from which he now appeals.

■ Just as the courts have found reasonable the delay while pretrial motions and interlocutory appeals are resolved, it was reasonable for the Government to wait until this very important issue of law was settled before bringing Ringstaff to trial. *See United States v. Loud Hawk*, 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986) (Government's interlocutory appeal which took two years accorded little weight in *Barker* balancing); *Government of the Virgin Islands v. Burmingham*, 788 F.2d 933 (3d Cir.1986) (18–month delay between indictment and trial justified where Territorial Court sought clarification of applicability of Speedy Trial Act to criminal proceedings in its court); *United States v. Guerrero*, 756 F.2d 1342, 1349–50 (9th Cir.1984) (per curiam) (20–month delay during appeal of pretrial suppression order was justified and did not weigh at all against the government), *cert. denied, sub nom. Booth v. United States*, 469 U.S. 934, 105 S.Ct. 334, 83 L.Ed.2d 270 (1984); *United States ex rel. Fitzgerald v. Jordan*, 747 F.2d 1120 (7th Cir.1984) (speedy trial right not violated by 8–month delay while State appealed judge's decision declaring unconstitutional a state statute mandating trial as an adult for 16–year–old defendant charged with armed robbery), *cert. denied*, 471 U.S. 1056, 105 S.Ct. 2120, 85 L.Ed.2d 484 (1985); *United States v. Herman*, 576 F.2d 1139 (5th Cir.1978) (18–month delay while state appealed pretrial suppression of incriminating statements made by the defendant was justified). *See also Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (although not addressing speedy trial, the Court recognized in the context of a double jeopardy claim that resolution of some issues prior to trial is appropriate).

These cases all hold that if the delay had occurred because the legal issue was being determined by pretrial procedures in this case, that delay would be justified in the speedy trial context. Where the issue was being promptly pursued in other litigation, it was not unreasonable for the Government to wait, rather than to attempt to litigate the issue in this case, and necessarily every other capital murder case pending, in order to forestall an automatic speedy trial problem.

There is no evidence that the delay was due to bad faith or a dilatory purpose by the Government. *See Loud Hawk*, 474 U.S. at 316, 106 S.Ct. at 656. The dissent asserts that the Government's motive was to increase the likelihood that Ringstaff would receive the death penalty and that this motive was an improper maneuver to gain some "tactical advantage" over the defense. It speculates that the trial court may have been hesitant to sentence a defendant to death because of the uncertainty surrounding Alabama law prior to *Beck*. The district court made no finding of fact that such was the State's motive and the allegation is not supported by the evidence. This is not a case where the Government delayed to harass the defendant or to specifically interfere with the defense, such as delaying the trial to prevent a particular witness from testifying. *United States v. Avalos*, 541 F.2d 1100, 1113 (5th Cir.1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977); *cf. Arrant v. Wainwright*, 468 F.2d 677, 681 (5th Cir.1972) (two-year delay in murder trial not justified when only reason offered by state attorney was that he "did not want to see [the defendant] be acquitted of this crime."), *cert. denied*, 410 U.S. 947, 93 S.Ct. 1369, 35 L.Ed.2d 613 (1973). Rather, the Government merely waited to see if it could legally proceed with a capital murder prosecution.

The courts should not lightly dispense with the actual prejudice requirement because to do so necessarily results in the

"severe remedy of dismissal of the indictment." *Barker,* 407 U.S. at 522, 92 S.Ct. at 2187. That is, the three *Barker* factors must indeed weigh *heavily* against the Government before prejudice should be presumed. Indeed, in *Barker* itself there was a *five-year* delay between the defendant's arrest and trial with much of that time attributable to the State's desire to wait until the conviction of a co-defendant whose testimony was believed necessary to the defendant's conviction. Although noting that the delay was "too long a period," the Court nonetheless proceeded to the analysis of whether the defendant had been prejudiced by it, ultimately concluding he had not.

■ Where the delay was not the result of bad faith or a deliberate attempt to "hamper the defense," and was a reasonable and efficient use of judicial resources, a defendant is required to show he suffered actual prejudice in order to prevail. The Court in *Barker* identified three interests which the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2192. Of these three interests, the Supreme Court characterized the third as being the most significant.

■ The only evidence of impairment to his defense was Ringstaff's testimony that he was unable to contact a particular witness named "Larry" who could have established an alibi for him. The problem he cites goes to the fact of his incarceration and not to the length of time between his arrest and trial. It is at least arguable that more time, not less, was needed in order for Ringstaff to find this man and that his only claim is that he should have been free during the intervening period. He has not raised any issue concerning his pretrial detention. At any rate, as the district court found and Ringstaff himself concedes, there were several alibi witnesses who did testify as to his whereabouts on the date of the murder and "Larry's" testimony would be merely cumulative of the testimony already presented at trial.

Because Ringstaff has shown no actual prejudice, the district court's denial of his writ of habeas corpus was proper.

AFFIRMED.

JOHNSON, Circuit Judge, dissenting:

Today, this Court effectively deletes from the Constitution a goodly portion of the speedy trial guarantee. I am constrained to dissent.

## I. INTRODUCTION

Numerous cases currently on the docket of the United States Supreme Court present important and widely applicable issues of criminal law and procedure. *See, e.g., Florida v. Wells, cert. granted,* ⸺ U.S. ⸺, 109 S.Ct. 3183, 105 L.Ed.2d 692 (1989) (inventory rationale for warrantless search of closed container in impounded vehicle); *Maryland v. Buie, cert. granted,* ⸺ U.S. ⸺, 109 S.Ct. 2447, 104 L.Ed.2d 1001 (1989) (validity of cursory search for accomplices after warranted arrest of suspect in home); *Butler v. McKellar, cert. granted,* ⸺ U.S. ⸺, 109 S.Ct. 1952, 104 L.Ed.2d 422 (1989) (retroactivity of *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988) (police questioning barred after invocation of right to counsel in context of separate investigation)); *Saffle v. Parks, cert. granted,* ⸺ U.S. ⸺, 109 S.Ct. 1930, 104 L.Ed.2d 402 (1989) (anti-sympathy instructions at penalty phase of capital trial); *United States v. Verdugo–Urquidez, cert. granted,* ⸺ U.S. ⸺, 109 S.Ct. 1741, 104 L.Ed.2d 178 (1989) (applicability of Fourth Amendment to search by U.S. Government agents on foreign soil); *New York v. Harris, cert. granted,* ⸺ U.S. ⸺, 109 S.Ct. 1741, 104 L.Ed.2d 178 (1989) (validity of Mirandized confession after warrantless home arrest); *Baltimore Dep't of Social Services v. Bouknight, cert. granted,* ⸺ U.S. ⸺, 109 S.Ct. 1636, 104 L.Ed.2d 152 (1989) (effect of order to produce previously abused infant on mother's Fifth Amendment rights); *Michigan v. Harvey, cert. granted,* ⸺ U.S. ⸺, 109 S.Ct. 1117, 103 L.Ed.2d 180 (1989) (use of uncounseled statement for impeachment purposes).

As of September 14, 1989, the Supreme Court of Alabama had 151 criminal appeals on its docket. These appeals, from cases recently decided by the Alabama Court of Criminal Appeals, raise a wide variety of criminal law and procedure issues.[1] *See, e.g., Miller v. State,* 1989 WL 60798 (Ala. Crim.App. April 28, 1989) (failure to instruct jury on lesser included offense); *Schaut v. State,* 1989 WL 60801 (Ala.Crim. App. April 28, 1989) (prior bad acts evidence); *Callahan v. State,* 1989 WL 60821 (Ala.Crim.App. April 14, 1989) (judicial recusal; judge as material witness); *Hubbard v. State,* 1989 WL 60813 (Ala.Crim.App. April 14, 1989) (entry of judgment on lesser included offense by appellate court); *McVickers v. State,* 1989 WL 60822 (Ala. Crim.App. April 14, 1989) (search of auto on private driveway; plain view); *Rodgers v. State,* 1989 WL 61285 (Ala.Crim.App. April 14, 1989) (corroboration of incest victim's testimony); *Luttrell v. State,* 1989 WL 31888 (Ala.Crim.App. Feb. 24, 1989) (voluntariness of confession); *Whisenhant v. State,* 1988 WL 105209 (Ala.Crim.App. Aug. 23, 1988) (recusal of trial judge; venue; prosecutorial misconduct; juror opposed to death penalty; jury instructions) (all available on Westlaw).

The significance of this survey should be obvious. The *en banc* majority's decision in this case authorizes Alabama, and by extension Georgia and Florida, to hold any pretrial detainee indefinitely until some arguably relevant legal issue is decided in a case pending before a state or federal appellate court. No matter how vociferously a defendant demands his constitutional right to a speedy trial, the state may delay and delay and delay in anticipation of the "guiding star"[2] of the appellate court's decision. Given the number of issues constantly under consideration in the Supreme Courts of the United States, Alabama, Georgia, and Florida, the majority gives these states the means to hold many, if not most, pretrial detainees against their will for extended periods of time. The majority's decision raises the prospect of a substantial evisceration of the constitutional right to a speedy trial.

## II. DISCUSSION

### A. *The* Barker *Framework*

The Supreme Court, in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), set forth a four-part balancing test for evaluating speedy trial claims. The factors to be considered are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *See id.* at 530–33, 92 S.Ct. at 2191–93. These factors are balanced on an *ad hoc* basis. *Id.* at 530, 92 S.Ct. at 2191–92. In this case, the *en banc* majority concedes that the length of delay was presumptively prejudicial, and therefore requires inquiry into the other three factors. *Cf. id.* The majority also correctly concedes that the defendant need not show actual prejudice under the fourth factor if the first three factors weigh heavily against the state. *See United States v. Mitchell,* 769 F.2d 1544, 1547 (11th Cir.1985), *cert. denied,* 474 U.S. 1066, 106 S.Ct. 819, 88 L.Ed.2d 792 (1986) & *cert. denied sub nom. Anthony v. United States,* 475 U.S. 1028, 106 S.Ct. 1230, 89 L.Ed.2d 339 (1986).

The majority does not dispute that factors one and three under *Barker* weigh heavily against the state. As the majority notes, nine of the 23 months of delay are attributable to the state's decision to await the Alabama Supreme Court's decision in *Beck v. State,* 396 So.2d 645 (Ala.1981), following the United States Supreme Court's partial invalidation of Alabama's death penalty statute in *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). In *Beck v. State,* the Alabama Su-

---

1. Because the Alabama Supreme Court does not publish orders granting review, it is not certain which of these appeals will be given plenary consideration.

2. *See Ringstaff v. State,* 451 So.2d 375, 381 (Ala. Crim.App.1984).

preme Court held that the remainder of the death penalty statute was severable and still valid despite *Beck v. Alabama.* An additional seven months of the delay are unexplained and also directly attributable to the state. Thus, Ringstaff suffered a total delay at the hands of the state of 16 months.[3] As to factor three, the district court in this case found, and the majority does not dispute, that Ringstaff timely asserted his right to a speedy trial.

Thus, the majority correctly defines the question presented in this case as being whether factor two under *Barker*—the reason for the delay—weighs heavily against the state.

### B. *The Reason for Delay*

This case turns on the legitimacy of the reasons for the state's refusal to try Ringstaff pending the Alabama Supreme Court's *Beck* decision. The majority accepts the state's contention that it exercised "commendable caution and circumspection"[4] in failing to try Ringstaff before *Beck,* on the ground that if *Beck* had invalidated the entire death penalty statute, the state would have been forced to undertake the inefficient and expensive task of retrying Ringstaff. This argument is completely specious. Even if Ringstaff had been tried immediately and sentenced to death, and even if the death penalty statute had been subsequently struck down in its

entirety, *under no circumstances would he have been entitled to a new trial.*

In 1972, the Alabama capital sentencing framework, along with that of most other states, was effectively struck down by *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The Supreme Court of Alabama, however, did not grant new trials to those defendants sentenced to death under the invalid statute. Like most other courts around the nation, it simply converted all sentences of death to life imprisonment. *See Hubbard v. State,* 290 Ala. 118, 274 So.2d 298, 300 (1973). Under *Hubbard,* no threat of retrial loomed in this case.[5] The state's delay did not work to conserve judicial resources. Its claim is utterly without merit.

The real motive behind the decision to wait was established with abundant clarity during oral argument before the original panel of this Court:

> JUDGE JOHNSON: The only reason you waited, isn't it, is that under the statute that the Supreme Court left the State of Alabama with, the trial court might not have considered giving Ringstaff the death penalty ...
>
> BRENDLE (FOR THE STATE): Right.
>
> JUDGE JOHNSON: And you were waiting for the Supreme Court of Alabama to hold that it was severable so that you could still ask for the death penalty.

---

3. As the majority notes, seven of the 23 months' delay are attributable to Ringstaff's own request for a psychiatric evaluation, and need not be considered.

4. *See Ringstaff,* 451 So.2d at 381.

5. It is true that following the United States Supreme Court's *Beck* decision, the Alabama Supreme Court chose to order retrial of all pre-*Beck* capital convictions found to have violated *Beck. See Beck v. State,* 396 So.2d 645, 656–64 (Ala.1981) (holding Alabama death penalty statute severable from provision invalidated in *Beck,* construing statute to comply with procedural requirements of *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) and its progeny, and ordering remand for retrial with death as an available sentencing option). This, however, was evidently because the state sought the opportunity to impose the death penalty on retrial and because the defendants in that class of cases sought the chance to be convicted of a

lesser included offense on retrial. *See Beck,* 396 So.2d at 647.

Ringstaff would not have been in the same posture as the pre-*Beck* capital defendants, had he been tried and convicted promptly and sentenced to death, and had the Alabama Supreme Court subsequently invalidated the entire death penalty statute. Because the United States Supreme Court's *Beck* decision followed Ringstaff's arrest by only one week, he would have received the *Beck*-mandated lesser-included-offense instruction (just as he eventually received it at his actual, much-delayed trial). Furthermore, because of the hypothetically invalidated death penalty statute, death would not have been available to the state on retrial. Thus, Ringstaff would have been in the precise posture of those capital defendants whose sentences were commuted to life following *Furman.*

BRENDLE: Right, Your Honor.

The state was unable to cite any justification for this strategy:

> CHIEF JUDGE RONEY: For other reasons, though, do you have any authority that the state can wait to prosecute until the law clears up as far as ...
>
> BRENDLE: I haven't run across a case, Your Honor.

An examination of the record with the aid of everyday common sense leaves little doubt that the state refused to bring Ringstaff to trial until it could confidently ask that he be put to death. In view of the above-quoted interchange, I find utterly inexplicable the majority's characterization of this finding as being based on mere "speculation" unsupported by the record.

This reason for delay weighs heavily against the state. Indeed, I find it hard to conceive of a more unsavory tactical delay. *See Barker,* 407 U.S. at 531 n. 32, 92 S.Ct. at 2192 n. 32 (tactical delay weighs heavily against the state); *United States v. Baron,* 336 F.Supp. 303, 305–06 (S.D.N.Y.1971) (delay caused by prosecution's desire to try eleven defendants serially due to novel question of law presented in all cases held dilatory).[6]

### C. *Prejudice*

Even if the majority were correct in its analysis of the first three factors under *Barker,* I could not agree with its conclusion that Ringstaff necessarily suffered no actual prejudice from the state's delay. The majority focuses exclusively on whether the delay in Ringstaff's trial hampered his defense. *Barker* establishes, however, that a defendant may suffer prejudice in at least three ways:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identi-

fied three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.

*Barker,* 407 U.S. at 532, 92 S.Ct. at 2192–93; *see also Prince v. Alabama,* 507 F.2d 693, 707 (5th Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 147, 46 L.Ed.2d 108 (1975) ("[T]he speedy trial right is designed to protect against two distinct types of prejudice—'prejudice to [the] defendant's defense and prejudice to [the] defendant's person.'") (quoting Note, *The Lagging Right to a Speedy Trial,* 51 Va.L.Rev. 1587, 1593 (1965)) (brackets added by *Prince* court).

The record before this Court is incomplete with regard to the first two considerations noted in *Barker.* Some evidence, such as Ringstaff's psychiatric examination, may indicate that his incarceration had a prejudicial effect on him. Without a complete record, including a copy of the psychiatrist's report and additional testimony, I cannot conclude with any confidence that he suffered no prejudice. I think it proper to take judicial notice, as has the Supreme Court, of conditions in Alabama criminal detention facilities. *See Dothard v. Rawlinson,* 433 U.S. 321, 334, 97 S.Ct. 2720, 2729, 53 L.Ed.2d 786 (1977) ("The environment in Alabama's penitentiaries is a peculiarly inhospitable one for human beings.... [T]he conditions of confinement in the prisons of the State, characterized by 'rampant violence' and a 'jungle atmosphere,' are constitutionally intolerable.") (quoting *Pugh v. Locke,* 406 F.Supp. 318, 325 (M.D.Ala.1976) (Johnson, J.)). Therefore, even if I agreed with the majority that Ringstaff is required to show actual prejudice under the circumstances of this case, I would remand, in the interests

---

**6.** Seven of the state's 16 months of delay were unexplained, despite the fact that the state's case was fully prepared and it was ready to proceed. Under *Barker,* negligence is weighted less heavily than a deliberate or tactical delay. *See* 407 U.S. at 531, 92 S.Ct. at 2192 ("A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ulti-

mate responsibility for such circumstances must rest with the government rather than with the defendant."). The state has failed to provide an acceptable excuse for the seven months of negligent delay attributable to it. This additional delay merely accentuates the inexcusability of the state's deprivation of Ringstaff's right to a speedy trial.

of justice, for a limited evidentiary hearing on that issue.

### III.  CONCLUSION

It is difficult to avoid the conclusion that a dominant factor in the majority's disposition of this case is the admittedly "severe remedy of dismissal of the indictment when the right has been deprived." *Barker*, 407 U.S. at 522, 92 S.Ct. at 2187–88.  But as Justice Scalia has observed in the search and seizure context, "there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all." *Arizona v. Hicks*, 480 U.S. 321, 329, 107 S.Ct. 1149, 1154–55, 94 L.Ed.2d 347 (1987).  What goes for the privacy values secured by the Fourth Amendment applies with no less force to the fundamental fairness and liberty interests secured by the right to a speedy trial.  "It is a truism that constitutional protections have costs." *Coy v. Iowa*, — U.S. —, 108 S.Ct. 2798, 2802, 101 L.Ed.2d 857 (1988) (Scalia, J.).

For the foregoing reasons, I dissent and would grant the writ.