**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Marc Gilbert DOGGETT,
Defendant–Appellant.**

**No. 89–3298.**

United States Court of Appeals,
Eleventh Circuit.

July 19, 1990.

---

574

William J. Sheppard, Elizabeth L. White, Sheppard and White, P.A., Jacksonville, Fla., for defendant-appellant.

Thomas E. Morris, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and ATKINS *, Senior District Judge.

KRAVITCH, Circuit Judge:

Marc Doggett appeals his conviction on one count of conspiracy to import cocaine entered pursuant to a conditional plea agreement. Doggett contends that the eight and a half year delay between his indictment and arrest violated his sixth amendment right to a speedy trial.[1] The district court adopted the recommendation of a magistrate that found no violation. We affirm.

### STATEMENT OF FACTS

Marc Doggett was indicted on February 22, 1980, for conspiring to import cocaine in violation of 21 U.S.C. § 963 and conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. A warrant for Doggett's arrest was issued the same day. In order to make simultaneous arrests of several

---

* Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

1. The Speedy Trial Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial...." U.S. CONST. amend. VI.

individuals involved in the conspiracy, Douglas Driver, the Drug Enforcement Administration (DEA) agent who conducted the investigation of Doggett notified the United States Marshal's Service that the DEA would coordinate Doggett's arrest. It is uncontested that Doggett did not know at this or any other time prior to his arrest in 1988 that he had been indicted or that a warrant for his arrest had issued.

On March 18, 1980, agent Driver instructed two law enforcement officers to arrest Doggett at his parents' home. Doggett's mother informed them that her son had left for Bogota, Colombia four days earlier. Driver entered a notation in the Treasury Enforcement Communication System (TECS),[2] alerting all U.S. Customs stations that Doggett was wanted pursuant to an arrest warrant. Driver also sent a teletype to all of the United States Customs stations, the El Paso Intelligence Center (EPIC),[3] and INTERPOL stating that Doggett was wanted by the DEA pursuant to an arrest warrant issued in Florida. The teletype provided a description of Doggett, the name of his travelling companion, Doggett's flight information relating to his trip to Colombia, and agent Driver's contact number. Driver did not place Doggett on the National Crime Information Center (NCIC)[4] computer system because he erroneously believed that the TECS notation and EPIC teletype would suffice to enter Doggett onto the system. Driver's TECS notation, unbeknownst to him, expired in September 1980 and was deleted from the system. On March 18, 1981, Driver realized that Doggett had not been placed on the NCIC computer and completed a fugitive declaration form which accomplished that purpose.

On September 21, 1981, Driver was informed by agent Williams, the official in charge of DEA operations in Panama, that Doggett had been arrested on drug charges by the Panamanian authorities.

Driver requested Williams to initiate informal expulsion proceedings, but made no attempts to extradite Doggett formally. Driver testified that he did not try to initiate extradition proceedings because he was told by law enforcement officials in the United States embassy in Panama that the extradition treaty between the United States and Panama did not cover drug offenses. Additionally, Driver testified that expulsion proceedings had succeeded both before and after their attempted use on Doggett in expelling wanted individuals to the United States. On October 15, 1981, Williams received a letter from the attorney general of Panama agreeing to expel Doggett to the United States once the Panamanian prosecution was completed. Williams left Panama in July 1982 and reported to Driver that Doggett was still in Panamanian custody.

On July 15, 1982, however, Doggett was released by Panamanian authorities. Several cables from the United States embassy in Panama to the Department of State in Washington, D.C., indicate that the United States was notified both of Doggett's release and of his plans to return to Colombia. Doggett proceeded to Colombia where he lived with his aunt for nearly three months. On September 25, 1982, Doggett returned to the United States and was admitted by United States Customs at John F. Kennedy Airport in New York City.

From 1982 to 1985 Agent Driver continued to believe that Doggett was being held by the Panamanian authorities. During this period, Driver filed three DEA–6 status forms stating that Doggett was in custody in Panama and that a request for expulsion had been made. Driver testified that it was his understanding that American citizens serving time in Panamanian prisons for drug offenses usually were not released for five or ten years. Therefore, he assumed that Doggett had received a lengthy sentence from the Panamanians,

---

2. TECS is the computer system used by customs agents to screen individuals entering the United States at airports and border crossings.

3. EPIC coordinates intelligence gathering operations for various federal law enforcement agencies, including the Marshal's Service, DEA, and the Customs Service.

4. The NCIC system alerts police if someone they have arrested is wanted in another jurisdiction.

and did not communicate with Williams's successor concerning Doggett's status. Driver did not discover that Doggett had already been released until he was transferred to Panama in August 1985.

Nevertheless, Driver made no specific effort to locate Doggett after 1985 because he believed that the defendant was living in Colombia. Driver knew that Doggett had been living in Colombia before he came to Panama and had obtained documents from Panamanian law enforcement officials indicating that Doggett had an address in Bogota, Colombia, and that he was using his mother's maiden name as an alias. Driver testified that he did not attempt a fifty state driver's license or credit search because he did not believe the defendant was in the United States, the defendant had a history of using other names, and such investigative techniques were nearly always unsuccessful.

In September 1988, pursuant to WANT II,[5] a Marshal's office program that checks all outstanding warrants to see if they have been served, a credit check was made on Doggett. Within thirty minutes the government discovered Doggett's driver's license number, the make and tag of his car, his wife's name, his employer, and his address. Doggett was arrested on September 5, and arraigned on September 20, 1988.

It is undisputed that from the time Doggett returned to the United States to the present, he has led a normal, productive, and law-abiding life. He met his wife in October 1982 and married a year later. Doggett interacted openly and freely in the community using his real name and making no attempt to conceal his identity or whereabouts. He financed two houses through the bank, possessed credit cards, was a registered voter, filed income tax returns, obtained a driver's license, was issued three traffic tickets, obtained his associate degree at college, and was employed as a computer operations manager.

## DISCUSSION

■ The facts in this case are essentially undisputed. The point of contention is the magistrate's application of the *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), sixth amendment speedy trial analysis to the facts.[6] The trial court's legal conclusion that Doggett failed to establish a violation of his constitutional right to a speedy trial is reviewable de novo. The factual findings underpinning this legal conclusion are reviewed for clear error. *Mitchell*, 769 F.2d at 1547; *see United States v. Bagga*, 782 F.2d 1541, 1544–45 (11th Cir.1986).

■ In *Barker*, the Court enumerated four factors that should be considered in assessing the assertion of a speedy trial violation. These factors are (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530–32, 92 S.Ct. at 2192–93; *see Loud Hawk*, 474 U.S. at 313–14, 106 S.Ct. at 655; *Ringstaff v. Howard*, 885 F.2d 1542, 1543 (11th Cir.1989) (en banc). These factors must be carefully balanced because none of them is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy

---

5. WANT II was a special narcotic fugitive apprehension program targeting roughly 8,000 individuals with outstanding warrants. The program resulted in 225 arrests out of 8,000 cases.

6. We initially note our agreement with the magistrate's determination that the indictment returned against Doggett on February 22, 1980, activated his sixth amendment right to a speedy trial even though he had no knowledge of the indictment until he was arrested. This result is compelled by the Supreme Court's holding that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment." *Dillingham v. United States*, 423 U.S. 64, 65, 96 S.Ct. 303, 304, 46 L.Ed.2d 205 (1975); *United States v. Marion*, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); *see United States v. Loud Hawk*, 474 U.S. 302, 310–12, 106 S.Ct. 648, 653–54, 88 L.Ed.2d 640 (1986); *see, e.g., United States v. Mitchell*, 769 F.2d 1544, 1546–47 (11th Cir. 1985), *cert. denied*, 474 U.S. 1066, 106 S.Ct. 819, 88 L.Ed.2d 792 (1986) (calculating delay for speedy trial purposes from time indictment returned even though defendant did not know of indictment).

trial." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193; *Mitchell*, 769 F.2d at 1546; *United States v. Dennard*, 722 F.2d 1510, 1512 (11th Cir.1984).

■ The Eleventh Circuit, en banc, recently revisited the speedy trial issue in *Ringstaff v. Howard*, 885 F.2d 1542 (11th Cir.1989). The court interpreted *Barker* as requiring the length of the delay to be "presumptively prejudicial" in order to trigger an inquiry into the other three factors. *Id.* at 1543; *see Loud Hawk*, 474 U.S. at 314, 106 S.Ct. at 655. The court noted that absent bad faith or a deliberate effort to hamper the defense, a defendant is required to show actual prejudice in order to prevail. *Ringstaff*, 885 F.2d at 1545. The defendant need not show actual prejudice, however, if the other three factors weigh heavily against the prosecution. *Id.* at 1543.

The government concedes that the eight and a half year delay is presumptively prejudicial, warranting an inquiry into the other three factors. The magistrate found that the other three factors did not weigh against the government sufficiently to dispense with the requirement of actual prejudice. The magistrate subsequently found that the defendant had failed to show actual prejudice and therefore concluded that his right to a speedy trial had not been violated. The district court adopted the magistrate's recommendation. The following analysis will address each of the *Barker* factors seriatim.

## Length of Delay

This factor clearly weighs heavily in favor of the defendant. In *Barker*, the Supreme Court described a five year delay as "extraordinary." 407 U.S. at 533, 92 S.Ct. at 2193–94. Likewise, in *Ringstaff*, the Eleventh Circuit found a twenty-three month delay to be presumptively prejudicial. 885 F.2d at 1543; *cf. Bagga*, 782 F.2d at 1542 (thirty-six month delay presumptively prejudicial); *Mitchell*, 769 F.2d at 1546 (twenty-nine month delay presump-

tively prejudicial); *Dennard*, 722 F.2d at 1513 (fifteen month delay presumptively prejudicial). The government has conceded that the length of the delay is presumptively prejudicial.

## Reason for the Delay

■ Once an individual has been indicted, the government has a constitutional duty to make a diligent good-faith effort to locate, apprehend, and bring to trial the accused. *Bagga*, 782 F.2d at 1543; *see Smith v. Hooey*, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969). This duty persists even when the accused is out of the country. *Bagga*, 782 F.2d at 1543. Thus, when the government acts negligently in seeking and apprehending the accused, the reason for the delay should be weighed against the government. *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192; *Dennard*, 722 F.2d at 1513; *see Bagga*, 782 F.2d at 1544; *United States v. Carter*, 603 F.2d 1204, 1207 (5th Cir.1979);[7] *United States v. Greene*, 578 F.2d 648, 655 (5th Cir.1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979), *United States v. Palmer*, 537 F.2d 1287, 1288 (5th Cir.1976), *cert. denied*, 434 U.S. 1018, 98 S.Ct. 738, 54 L.Ed.2d 764 (1978).

■ In order for this factor to be weighed *heavily* against the government, however, the trial delay must result from bad faith or a dilatory purpose by the government. *Ringstaff*, 885 F.2d at 1544; *see Loud Hawk*, 474 U.S. at 315–16, 106 S.Ct. at 656; *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192; *Carter*, 603 F.2d at 1207; *Palmer*, 537 F.2d at 1288. Bad faith encompasses a deliberate effort to prejudice or harass the defendant, while a dilatory purpose will include efforts made by the government to gain a tactical advantage over the accused. *See Loud Hawk*, 474 U.S. at 315, 106 S.Ct. at 656; *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192; *Marion*, 404 U.S. at 325, 92 S.Ct. at 466; *Ringstaff*, 885 F.2d at 1544; *Bagga*, 782 F.2d at 1544.

7. The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

■ The court below appropriately weighed this factor against the government rather than the defendant, because the delay in arresting Doggett is better attributed to the government's negligent law enforcement efforts than the conduct of the defendant. Agent Driver erred in allowing the TECS notation to lapse in September 1980 and in failing to place Doggett on the NCIC computer system until March 1981.[8] Additionally, the government, through the negligence of either the DEA or the State Department, erred in failing to notify the appropriate law enforcement personnel that Doggett was returning to the United States.[9] As a result, Doggett was not apprehended upon entering the United States and agent Driver did not know that Doggett had been released from the Panamanian prison until August 1985. Finally, agent Driver acted negligently in failing to pursue Doggett in the United States because he erroneously assumed that Doggett was living in Colombia. Driver did not attempt to verify that Doggett was in Colombia and did not make any effort to locate Doggett in the United States in the event that his assumption concerning Doggett's whereabouts was incorrect. In fact, had Driver periodically sought verification from the State Department that Doggett was still being held by the Panamanian authorities, he would have realized that Doggett had left the country well before August 1985.

■ Because the government's efforts to apprehend Doggett were negligent and there is no persuasive evidence that Doggett purposefully tried to evade capture, the reason for the delay must be weighed against the government. This factor, however, should not be weighed heavily against the government. There is no contention here that the government deliberately delayed apprehending Doggett.[10] Doggett does not allege that the government purposefully sought to prejudice, harass, or gain any other advantage over him by delaying the arrest. Indeed, there is no reason to believe that the government would not have immediately seized the opportunity to arrest Doggett had they succeeded in locating him sooner. Although a showing of deliberate delay is not necessary for an individual to establish a constitutional speedy trial violation if he demonstrates actual prejudice, it is a necessary prerequisite to weighing the reason for the delay heavily against the government.

### Defendant's Assertion of the Right

■ The magistrate determined that Doggett's failure to assert his right to a speedy trial soon after his indictment should not be weighed against him because

---

8. It bears noting that neither of these errors was particularly significant in contributing to the delay in arresting the defendant. Agent Driver entered the TECS notation immediately after the agents failed to arrest Doggett at his parent's home. Although this notation expired while Doggett was incarcerated in Panama, the NCIC entry was in place when Doggett reentered the country in September 1982. This notation would have alerted Customs officials at JFK airport that there was an outstanding warrant for the defendant's arrest. The Customs officers at JFK, however, are only able to conduct random NCIC checks due to the great number of individuals entering the country. The failure of these officials to conduct a check of Doggett is unfortunate, but not negligent. *See United States v. Deleon,* 710 F.2d 1218, 1221 (7th Cir. 1983).

9. Doggett's suggestion that the government acted negligently in failing to extradite him while he was incarcerated in Panama is without merit. The DEA acted within its discretion in determining that informal expulsion proceedings would be a more effective means of bringing Doggett to trial in the United States than formal extradition. The magistrate received ample evidence that the expulsion process had succeeded previously and that extradition, in practice, was an impracticable means of seeking the release of wanted individuals from Panamanian jails. The failure of the Panamanian authorities to expel Doggett after they had agreed to do so, cannot be imputed to the United States.

10. Doggett does argue that the twenty-six day gap between his indictment and the first attempt to arrest him constitutes a deliberate breach of the government's duty to make a diligent, good faith effort to bring an accused to trial. Although the delay was deliberate, its length was insufficient to implicate speedy trial concerns and it was not motivated by a desire to gain an advantage over the accused. The court below did not clearly err in finding that the delay was necessary to facilitate the arrest of Doggett's codefendants and to coordinate the out-of-state arrest.

he was unaware of the pending charges. Doggett contends that his assertion of the right as soon as he became aware of the charges, following his 1988 arrest, requires this factor to be weighed heavily against the government. The magistrate's position is correct and supported by the precedent of this circuit.

In *United States v. Mitchell,* the defendants failed to assert their speedy trial right before their arrest because a sealed indictment prevented them from knowing of the impending charges. 769 F.2d at 1546. The Eleventh Circuit, applying the *Barker* analysis, affirmed the district court's refusal to weigh the defendants' assertion of the right after arrest in their benefit. *Id.* at 1547. Likewise, in *United States v. Dennard,* this court refused to weigh the assertion of the right factor against the government when the defendant did not know of the indictment until after her arrest. 722 F.2d at 1513.

■ These results are consistent with the Supreme Court's view of a defendant's assertion of the right as a measure of the point at which the deprivations occasioned by the trial delay begin to outweigh the benefits to the defendant. The Court describes the function of this factor stating:

> The strength of [a defendant's] ... efforts [to assert his speedy trial right] will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain.

*Barker,* 407 U.S. at 531, 92 S.Ct. at 2192. A defendant's late assertion of the right, regardless of the reason, is properly accorded less weight than an early assertion of the right because the reason that contributed to the delay generally has a concomitant effect of lessening the severity of the deprivation experienced by the defen-

dant from the trial delay. Here, for instance, Doggett's ignorance of the indictment and delayed arrest explain his failure to assert the right sooner, but also protected him from suffering the mental anguish associated with being accused of criminal activity and the physical restraints on his liberty that may have been occasioned by an early arrest.[11]

Although Doggett's failure to assert his right to a speedy trial soon after his indictment will not inure to his benefit, it will not be weighed against him because he did not know of the indictment until he was arrested. The magistrate, therefore, correctly weighed Doggett's assertion of the right as a neutral factor in the *Barker* analysis.

### *Prejudice to the Defendant*

■ In *Ringstaff,* the Eleventh Circuit held that a "defendant does not have to show actual prejudice by delay ... if the first three [*Barker* ] factors weigh heavily against the Government." 885 F.2d at 1543; *see Mitchell,* 769 F.2d at 1547; *Dennard,* 722 F.2d at 1513. Here, only the length of the delay weighs heavily against the government; therefore, an inquiry into the prejudice suffered by the defendant as a result of the delay is mandated.

■ The fact that the other two factors did not weigh heavily against the government, however, does not make them irrelevant to the speedy trial analysis. The Supreme Court has stated that the four factors

> are related ... and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process.

*Barker,* 407 U.S. at 533, 92 S.Ct. at 2193; *see Mitchell,* 769 F.2d at 1546; *Dennard,* 722 F.2d at 1512. Therefore, in assessing prejudice it is important to consider the

---

11. Concededly, the speedy trial right protects other interests, such as the societal desire to bring alleged criminals quickly to trial and a defendant's ability to present an unimpaired defense. *Barker,* 407 U.S. at 519–20, 532, 92 S.Ct. at 2186–87, 2193. Both of these interests are addressed by other factors in the *Barker* analysis. Furthermore, as with the other three factors, a defendant's failure to establish an early assertion of the right is not dispositive of his claim of a speedy trial violation. *Id.,* 407 U.S. at 533, 92 S.Ct. at 2193.

strength of the showing the defendant made on the other three factors. Where, as here, two of the factors weigh against the government and none of the factors favor the government, the defendant's showing of prejudice need not be as strong as if the majority of the factors had weighed against the defendant.[12]

[redacted] In addition to considering the first three *Barker* factors in evaluating prejudice, a court should also weigh the three central policies underlying the right to a speedy trial: the prevention of undue and oppressive incarceration prior to trial; the minimization of anxiety and concern accompanying public accusation; and the prevention of injury to the accused's ability to defend himself. *Loud Hawk,* 474 U.S. at 312, 106 S.Ct. at 654; *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193; *Ringstaff,* 885 F.2d at 1545. The first two policies underlying the right to a speedy trial are not implicated in this case. Doggett was never subject to pretrial incarceration and could not have suffered any "anxiety and concern" relating to his indictment until he first learned of it in September 1988.

[redacted] Doggett alleges that his ability to defend himself was impaired by the trial delay because he can no longer be sentenced under the lenient Young Adult Offender statute due to his age and the repeal of the act. *See United States v. Black,* 416 F.Supp. 59, 62 (M.D.Fla.1976) (loss of Young Adult Offender status constitutes prejudice). Even if we recognized the loss of Young Adult Offender status as an adequate basis for establishing prejudice, the magistrate correctly found that Doggett failed to show his entitlement to the act's protection. Doggett's eligibility for the act ended on June 10, 1982, on the eve of his twenty-sixth birthday. *See* 18 U.S.C. § 4216. From shortly after his indictment to his twenty-sixth birthday, Doggett was absent from the United States due to a combination of his voluntary travel abroad and his incarceration in Panama for drug smuggling. Therefore, any prejudice resulting from a loss of this favored status is directly attributable to the conduct of the defendant rather than any action of the government. In fact, during this period, the government had procured an agreement to expel Doggett from Panama and was waiting for the Panamanian authorities to carry out their promise.

The defendant also argues that he was prejudiced by the loss of tape recordings of conversations with DEA agents. He contends that the loss deprived him of potentially exculpatory evidence and of his ability to confront these witnesses with their prior statements. The magistrate properly rejected this ground as too speculative. Absent some proof that the destroyed evidence was exculpatory or that the evidence was destroyed in bad faith, we are unable to find that its absence impaired Doggett's defense. *Cf. Arizona v. Youngblood,* 488 U.S. 51, 57, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988); *Marion,* 404 U.S. at 325–26, 92 S.Ct. at 466; *Redman v. Dugger,* 866 F.2d 387, 389–90 (11th Cir.1989).

Furthermore, in *Mitchell,* we rejected a similar assertion of prejudice based on the destruction of taped conversations because, in part, we agreed with the district court that "there were other means and methods of producing that evidence by those present who heard the tape." 782 F.2d at 1544. Here, the individuals who appeared on the tape (Driver, the informant, Doggett, and his codefendants) were all available to testify as to the conversations recorded. Since the government carries the burden of proof in a prosecution, the loss of the tapes is far more likely to have prejudiced the government's ability to convict Doggett than impaired Doggett's ability to defend himself. *See Arizona v. Youngblood,* 488 U.S. at 59, 109 S.Ct. at

12. Doggett's assertion that the defendant does not bear the burden of establishing prejudice when the other three factors do not weigh heavily against the government is erroneous. The Eleventh Circuit has consistently placed that burden on the defendant. *See, e.g., Ringstaff,* 885 F.2d at [1543] (defendant must "prove prejudice" unless three factors weigh heavily against government); *Mitchell,* 769 F.2d at 1548 (defendant "must show actual prejudice" unless three factors weigh heavily against government); *Dennard,* 722 F.2d at 1513 (defendant must "demonstrate actual prejudice" unless three factors weigh heavily against government).

338 (Stevens, J., concurring); *Loud Hawk*, 474 U.S. at 315; 106 S.Ct. at 656. Doggett's remaining allegations of prejudice are speculative and meritless. The lower court's finding that Doggett failed to make an adequate showing of prejudice is, therefore, not clearly erroneous.

## CONCLUSION

Doggett has failed to establish a violation of his constitutional right to a speedy trial because he cannot show either that the first three *Barker* factors weigh heavily in his favor or actual prejudice. The judgment of the district court is, therefore, AFFIRMED.

CLARK, Circuit Judge, dissenting:

After conceding that none of the four factors relevant to a speedy trial claim favor the government, and two of the factors are in Doggett's favor, the majority denies his sixth amendment speedy trial claim because he cannot show prejudice. Because I think that the majority's approach is inconsistent with the requirements of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), I dissent.

After setting out the four factors applied by the majority, the *Barker* Court explained how a court should consider these factors:

A balancing test necessarily compels courts to approach speedy trial cases on an *ad hoc* basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right....

We regard *none of the four factors* identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fun-

damental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

407 U.S. at 533, 92 S.Ct. at 2193 (footnote omitted) (emphasis added). The majority ignores this directive and denies the claim because Doggett cannot show prejudice. The majority abdicates its responsibility to "engage in [the] difficult and sensitive balancing process." *Id.* The four factors in this case "should be considered together with [the] other circumstances [that are] relevant" to Doggett's claim. When this balancing is done fairly and equitably, Doggett is entitled to relief.

As noted above, there are two *Barker* factors favoring the defendant. The first is the length of the delay. As the majority notes, the five-year delay in *Barker* was characterized as "extraordinary." At 578. The delay in this case was eight and one-half years. In *Bell v. Lynaugh*, 828 F.2d 1085, 1094 (5th Cir.1987), the court characterized an eight-year delay as "unwarranted and presumptively prejudicial." Similarly, in *Garcia Montalvo v. United States*, 862 F.2d 425, 426 (2d Cir.1988), the court noted that "eight years is an inordinate amount of time in which to bring an indicted person to trial." I would place great weight on this factor in conducting the *Barker* balancing.

As the majority concedes, the government's only justification for this inordinate delay is that it was not guilty of "bad faith or a dilatory purpose." At 578. According to the majority, the government was merely "negligent." The majority correctly recounts the government's "attempts" to capture Doggett. It is evident on its face that the government did not capture Doggett because he was not worth the effort. He was a small fish in the ocean of those involved in the drug trade. Given that the government missed many opportunities to apprehend Doggett, I would consider its conduct in this case grossly negligent and would weigh this factor heavily against the government.[1]

---

**1.** I do not mean to suggest that the government

has to leave no stone unturned when attempting

I agree with the majority that Doggett cannot show any concrete examples of how he was prejudiced. Nevertheless, as *Barker* clearly holds, this showing is not "necessary" to make out a speedy trial clause violation. 407 U.S. at 533, 92 S.Ct. at 2193. The defendant cannot always show all of the prejudice he faces when the government waits over eight years to bring him to trial. As Justice Powell noted in *Barker:*

> There is also prejudice if defense witnesses are unable to recall accurately events of the faded past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Id.* at 532, 92 S.Ct. at 2193. This unprovable prejudice is one of the reasons why the majority's mechanistic approach is inconsistent with the sixth amendment guarantee.

There are other circumstances in this case which should be taken into account in determining Doggett's entitlement to relief. Because Doggett did not know he was indicted until he was arrested in 1988, he could not assert his right to a speedy trial earlier. In this case, Doggett has been leading "a normal, productive, and law-abiding life" since his return to the United States. At 577. It is reasonable to expect that after a certain point in time one will not have to answer for actions taken in the past. Generally, this protection is provided by the five-year statute of limitations in which "Congress has codified the policy that a person need not remain indefinitely in jeopardy for allegedly illegal acts." *See Mitchell,* 769 F.2d at 1547 (applying 18 U.S.C. § 3282). While the fact that the defendant does not learn about the charges until after the limitations period has expired does not automatically amount to a speedy trial violation, it is "another factor" that should be taken into account. *Id.* at 1547, 1548.

After balancing these factors, even after taking into account the Supreme Court's to apprehend those accused of relatively minor crimes. I realize that the government must deploy its law enforcement resources where they will be the most effective. Nevertheless, because criminal defendants are entitled by the

caution against an "overzealous application" of the "extreme remedy of dismissal," *Barker,* 407 U.S. at 522 & n. 16, 92 S.Ct. at 2188 & n. 16, Doggett was entitled to a dismissal of the charges against him. That society's interest in trying Doggett is insignificant is evident by the government's weak attempts to apprehend him. I would reverse.

constitution to a speedy trial, the government should not be allowed to use negligence to justify an eight-year delay when it has missed several opportunities to apprehend a criminal defendant.