**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Mohan Singh BAGGA,**
**Defendant-Appellant.**

**No. 85-8442.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 24, 1986.

Barry Hazan, Atlanta, Ga., for defendant-appellant.

William C. Bryson, Sp. Counsel, Appellate Section, U.S. Dept. of Justice, Washington, D.C., and James W. Herman, Sp. Atty., OC & R Section, Miami, Fla., for plaintiff-appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

DYER, Senior Circuit Judge:

Bagga was indicted on July 11, 1978 on one count of making false sworn declarations before a court of the United States in violation of 18 U.S.C. Section 1623. Prior to his trial on April 10, 1985 Bagga filed a motion to dismiss the indictment on the ground that he had been denied his right to a speedy trial under the Speedy Trial Clause of the Sixth Amendment. He contended that there was an unreasonable delay by the government in notifying him of his indictment and bringing him to trial, that he was prejudiced by the delay, and that he timely asserted his right to a speedy trial. The district court found to the contrary. We agree and affirm.

On February 17, 1978 Bagga testified under oath in the case of *United States v. Russell Weiss*, then pending in the United States District Court for the Northern Dis-

trict of Georgia. Weiss had been indicted for bribery, obstruction of justice, and possession of a firearm by a convicted felon. Weiss moved to dismiss the indictment against him contending that there had been government interference with his attorney-client relationship. At the hearing on Weiss' motion to dismiss Bagga was called as a witness. He had previously talked with Special Agent Whitley of the Federal Bureau of Investigation concerning an ongoing investigation of the night club industry in Atlanta, Georgia, during which there was some discussion about Bagga recording a bugged conversation between Bagga, Weiss and Brookins, Weiss' attorney. Bagga reported this to Shafer, who also represented Weiss, and at Shafer's request a telephone conversation between Bagga and Whitley was tape recorded by Shafer on February 6, 1978. This scheme was concocted to put Whitley on the spot, and thus bolster Weiss' position on his motion to dismiss his indictment. During the telephone conversation between Bagga and Whitley, Bagga said he had set up an appointment with Weiss at 10:00 a.m. and with Brookins at 1:00 p.m. Whitley told Bagga to forget the meeting with Weiss and, if he could, reverse the appointments so that he would meet with Brookins in the morning instead of the afternoon. The tape recorded by Shafer was introduced and played before the Court at the hearing of Weiss' motion to dismiss held on February 17, 1978. Bagga's testimony at the hearing, to the effect that the FBI agent had engaged in various improprieties in their dealings with him, was the basis of the charges contained in the indictment returned against Bagga in this case.

In April 1981, the tape introduced at Weiss' hearing was destroyed at the request of the Clerk of Court with the approval of the government and Weiss' attorney Shafer. Destroyed at the same time with their approval was a sheet of paper listing the names and telephone numbers of Whitley and a Special United States attorney in the Weiss case which had been furnished to Bagga by government counsel.

On learning of his wife's illness in India, Bagga left the United States and arrived there on April 18, 1978. He was indicted in this case on July 11, 1978. He first learned of the indictment against him through his accountant in June or July, 1981. He retained a lawyer in Atlanta who advised him to complete his law studies in India and continue to attend to his business enterprises there. In June 1984 Bagga returned to the United States and went to California to live. In October 1984 he turned himself in to face the charges against him.

Prior to Bagga's trial the district court held an evidentiary hearing on his motion to dismiss the indictment. The court found that a reasonable effort had been made on the part of the government to locate and bring Bagga to trial, that he made no attempt to obtain a speedy trial, and that there was no actual substantial prejudice suffered by Bagga in violation of his constitutional right. Bagga's motion to dismiss the indictment against him was denied. He was tried and convicted.

We must engage in a difficult balancing process "on an *ad hoc* basis" in determining whether Bagga "has been deprived of his right", by assessing the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).

Bagga asserts that the period of time critical to this case is from the point of his indictment in July 1978 to the point he learned of the indictment in June or July 1981. We accept this period only for determining that this delay is sufficiently long to be "presumptively prejudicial" thereby "triggering" an inquiry into the other three factors, i.e. reasons for the delay, defendant's assertion of his right, and prejudice to the defendant, to determine whether Bagga has been denied his constitutional right to a speedy trial. *Barker, supra*, at 530, 92 S.Ct. at 2192. The government does not dispute this. Bagga does not suggest that there was any impropriety in the delay between October 1984 when he was arrest-

ed and April 1985 when his trial began. For the reasons hereinafter discussed we regard the time span between Bagga learning of his indictment in June or July 1981 until his arrest in October, 1984 as also critical to the second prong of the *Barker* inquiry, i.e. the assertion of his right.

While the government is not required to exhaust all conceivable avenues for locating Bagga after his indictment, it has a "constitutional duty to make a diligent, good-faith effort" to locate and apprehend a defendant and bring the defendant to trial. *Smith v. Hooey*, 393 U.S. 374, 383, 89 S.Ct. 575, 579, 21 L.Ed.2d 607 (1969). There is no suggestion here that there was any attempt to delay the trial of Bagga in order to hamper his defense. The government strongly argues that it made a reasonable effort to locate Bagga, while Bagga is critical of the adequacy of the government's efforts to find him after the return of the indictment. To determine whether Bagga's right to a speedy trial has been violated the conduct of the government must be weighed against the conduct of the defendant. *Barker, supra,* 407 U.S. at 530, 92 S.Ct. at 2192.

Bagga received a call one evening in April 1978 advising him that his wife had suffered a nervous breakdown in India. He left the next morning to go to her. After the indictment in July, 1978 the agents were at a loss to determine where he had gone. Because of his sudden departure it was surmised that he was a fugitive. The agents looked for Bagga without success at his residence on East Winding Drive in Atlanta, the address that he had given the agents at the time of his interview with them. Apparently, he had moved from there by the time he was called as a witness in the Weiss case, because he then testified that he lived on Copeland Road, Sandy Springs. This could account for the agents' failure to find or telephone Bagga's relatives at the Copeland Road Complex where Bagga testified they were living during late 1978 and early 1979.

The agents also met with no success when they looked for Bagga at a restaurant known as the Colorado Mining Company in which Bagga's wife, mother-in-law and nephew had a joint enterprise ownership interest. One of the agents spoke to employees at the restaurant who could give the agent no information of Bagga's whereabouts. The record does not disclose whether the agents spoke to any of Bagga's relatives.

Bagga complains that there was insufficient inquiry made of the passport office to find his passport which was renewed on October 18, 1978 as a means to locate him or put him on notice of the charges. He argues that there can only be an assumption that the agents discovered this information and did not act upon it, or that the passport office negligently failed to discover it, and thus no notice of the indictment was put into his passport file in the American Embassy or Consular Office in India. We are unwilling to indulge in Bagga's assumption imputing to the agents a negligent or willful failure to act or to assume that the passport office was negligent. This carries the obligation of a diligent good-faith effort too far.

Finally, Bagga urges that when the government received a tip that Bagga was in India, it should have sought his extradition to the United States. It is true that Bagga's absence from the country did not relieve the government of its obligations to make good-faith efforts to have him returned. *See United States v. McConahy*, 505 F.2d 770 (7th Cir.1974). But such efforts do not require the government to pursue futile legal gestures. In the first place the extradition treaty with India expressly covers perjury, but it does not expressly cover a false declarations offense with which Bagga was charged. Thus, there was great doubt that this was an extraditable offense. Secondly, the government had no exact address for Bagga, a prerequisite to a request for extradition proceedings. While Bagga contends that the government could have learned of Bagga's exact address in India because Congressman Fowler, the Bombay Consu-

late, and the Immigration and Naturalization Service had correspondence with Bagga, we cannot fault the agents for not checking with them on the off-chance that they might have knowledge of Bagga's exact address in India. *See United States v. Deleon*, 710 F.2d 1218 (7th Cir.1983). The best that can be said is that if the government was at fault for not locating Bagga in India, it was clearly no more than mere negligence. "Though a purposeful attempt to delay the trial to prejudice the defendant or to gain a tactical advantage for itself should weigh heavily against the Government, *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. at 2192, a more neutral reason, such as negligence, does not necessarily tip the scale in favor of the defendant, particularly where the defendant was at liberty and outside the jurisdiction where the indictment was returned. *United States v. Walters,* 5 Cir., 1979, 591 F.2d 1195, 1201." *United States v. Carter,* 603 F.2d 1204, 1207 (5th Cir.1979).

Finally, the evidence shows that the agents sought information from the local police authorities, pursued a lead suggesting that Bagga would be in Detroit, registered his name with the nationwide crime information network and took steps to apprehend Bagga if and when he sought to return to the United States. The district court found that a reasonable effort was made to locate Bagga, and the failure to locate him was not a part of any scheme on the part of government agencies to prejudice his defense which could be raised in this action. We think that the record supports a finding that the government made a diligent good-faith effort to locate Bagga, and, in any event, the findings below are not clearly erroneous. *United States v. Mitchell,* 769 F.2d 1544, 1547 (11th Cir. 1985); *See United States v. Beery,* 678 F.2d 856, 869 (10th Cir.1982); *United States v. Parish,* 468 F.2d 1129, 1134 (D.C. Cir.1972), *cert. denied,* 410 U.S. 957, 93 S.Ct. 1430, 35 L.Ed.2d 690 (1973).

In support of Bagga's motion to dismiss the indictment he claims prejudice because his ability to defend himself was impaired by the destruction of the tape recording of his conversation with agent Whitley made on February 6, 1978 and played at the February 17, 1978 hearing on Weiss' motion to dismiss the indictment against him. The transcript of that hearing shows that the tape was not transcribed verbatim. The tape recording was destroyed in April 1981, after the trial and conviction of Weiss, with the consent of all counsel in the Weiss case. Bagga contends that the tape recording would have been relevant in this case to corroborate his testimony and impeach that of Whitley given in the Weiss case, and thus dispute the allegations in the specifications of the indictment in this case describing the communications and events that were claimed to be false. Bagga further submits that the paper with Whitley's name and telephone number, which was also destroyed at the same time as the tape recording, was relevant to his defense in this case, as showing the truthfulness of his testimony concerning one of the specifications in the indictment against him.

The district court found that the destruction of the tape recording did not constitute actual, substantial prejudice to Bagga because there were other means and methods of producing that evidence by those present who heard the tape, and by the transcription of the hearing held on February 17, 1978, in which agent Whitley was examined by the court and cross-examined by counsel for Weiss concerning the February 6, 1978 bugging of Whitley's conversation with Bagga. Agent Whitley acknowledged the accuracy of the tape recording, and testified that he intended to put a bug on Bagga when he was to meet with Brookins, Weiss' attorney at 1:00 p.m., and to leave it on when Bagga met with Weiss at 4:00 p.m. in accord with what was said in the tape recording. In addition to agent Whitley, prosecutor McCulley and Weiss' attorney Shafer also testified at the hearing. Their testimony covering the contents of the tape recording was consistent with Bagga's testimony.

Bagga now claims however that the February 6 conversation of Bagga with Whitley went beyond the areas explored in the

February 17, 1978 hearing. This is not borne out by the other witnesses. After our review of all of the evidence and inferences that may reasonably be drawn from it, we cannot say that the district court's finding was clearly erroneous. *See United States v. West,* 607 F.2d 300, 305 (9th Cir. 1979); *United States v. Jackson,* 504 F.2d 337, 341 (8th Cir.1974), *cert. denied,* 420 U.S. 964, 95 S.Ct. 1356, 43 L.Ed.2d 442 (1975).

Bagga's assertion that the destroyed paper was essential to his defense has no merit. Bagga testified that prosecutor McCulley gave him a paper at the grand jury containing agent Whitley's name and telephone number. He would have us infer that this would have corroborated his testimony that his grand jury appearance would be put off until the tape recording of Weiss and Brookins could be accomplished. But the prosecutor's testimony was that he gave Bagga the paper so that Bagga could call Whitley and find out when they would call him before the grand jury. The explanation of why Whitley's name and number were on the paper is as consistent with the prosecutor's testimony as it is with Bagga's.

Finally, we must assess whether and how Bagga asserted his right to a speedy trial. Bagga shrugs off this prong of *Barker v. Wingo* as not being relevant because he argues that there was an irreversible violation of his speedy trial right when the tape recording was destroyed in April 1981, and what occurred after that is of no consequence. Bagga, however, did not know that the tape had been destroyed, so that event could have no bearing on his decision whether or not he should press for a speedy trial. For the period before Bagga learned of the indictment he cannot be charged with a failure to request a speedy trial. But he learned of the indictment in June or July of 1981, and instead of returning or indicating a desire for a speedy trial, he remained in India for three years. Upon his return to the United States, instead of going to Atlanta, Georgia to answer the indictment where it was returned,

he went to California for four months before turning himself in. Bagga was a reluctant defendant who was not concerned with a speedy trial. *Barker v. Wingo* emphasized that "[t]he defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." 407 U.S. at 531, 532, 92 S.Ct. at 2192, 2193. The Court concluded that "barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial." *Id.* at 536, 92 S.Ct. at 2195. We need add no more.

AFFIRMED.