[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 08-11342
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 14, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-80056-CR-WPD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KARLTON SPAULDING,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(April 14, 2009)

Before BIRCH, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Karlton Spaulding ("Spaulding"), a federal prisoner, appeals his convictions

for cocaine offenses and carrying a firearm during a drug trafficking crime. Spaulding argues that the district court erred in denying his motion to dismiss the indictment on grounds that the four-year and eight-month delay between his indictment and trial violated his Sixth Amendment right to a speedy trial. We find no reversible error and AFFIRM his convictions.

## I. BACKGROUND

On 5 September 2002, Spaulding and Marlon Shanahan ("Shanahan") were arrested after purchasing seven kilograms of cocaine for $81,000 from an undercover officer in West Palm Beach, Florida. R10 at 116-117, 120-122, 124. The transaction was recorded on audio and videotape, as were previous negotiations. Id. at 118-23; R9 at 63-122. Agents recovered a loaded handgun, which Spaulding had purchased, from an automobile used during the exchange. R10 at 56, 60-61, 131. In order to preserve the undercover officer's identity for other investigations, authorities pretended to arrest the undercover officer and released Spaulding and Shanahan. Id. at 122-23; R3 at 45, 84.

On 22 April 2003, a federal grand jury in the Southern District of Florida indicted Spaulding and Shanahan for (1) conspiracy to possess with intent to distribute cocaine and (2) attempted possession with intent to distribute cocaine, both in violation of 21 U.S.C. §§ 841 and 846. R1-3 at 1-2. Spaulding was

2

charged in a third count with possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Id. at 2-3. The indictment was sealed until Spaulding's arrest pursuant to the government's motion. R1-1; R1-2. Because authorities were unable to locate either Spaulding or Shanahan, both men were deemed fugitives in July 2003. R1-6.

Authorities finally arrested Spaulding in DeKalb County, Georgia on 12 October 2007, at which time his indictment was unsealed. R1-8; R1-23 at 2; R3 at 86-87. Spaulding was arraigned on 14 November 2007 and pled not guilty. R1-15. On 7 December 2007, Spaulding filed a motion to dismiss the indictment on grounds that he had been deprived of his Sixth Amendment right to a speedy trial. R1-23.

Several federal agents testified at a two-day hearing about their efforts to locate Spaulding. After Spaulding's 2002 arrest and release, the undercover agent involved in the drug sale twice called Spaulding to see if he would come back to Florida. R3 at 84-85. FBI Agent Vincent Dreaden then began looking for Spaulding at his last known residence in McRae, Georgia, located in Telfair County. Id. at 4. After several weeks of investigation, Agent Dreaden met with the Telfair County Sheriff and with Spaulding's father, a deputy sheriff in Telfair County. Id. at 5-6. Although Spaulding's father had no idea where his son was, he

3

promised to assist the FBI.  Id.  Agent Dreaden then tracked down Shanahan's wife and searched her house, her mother's house, and her grandmother's house in hopes of finding Shanahan and Spaulding.  Id. at 7.  He and FBI Agent Brett Racine also investigated a residence in Warner Robbins, Georgia, after receiving information that Spaulding might be living there.  Id. at 12, 32.  Agent Racine spent several months surveilling a house in Warner Robbins and showed Spaulding's photograph to residents and local law enforcement officers.  Id. at 33-35.  Meanwhile, Agent Dreaden continued to keep in contact with the police in McRae and periodically drove by Spaulding's listed residence to see if the car Spaulding used to drive was there.  Id. at 18-19, 23.  He also sent Spaulding's photographs to the FBI office in West Palm Beach.  Id. at 12.

In addition to the FBI agents in the Atlanta Division, the Miami Division assisted in the hunt for Spaulding.  Id. at 42, 49.  Special Agent Michael Donohoe searched public databases for credit cards using Spaulding's social security number.  Id. at 46-47.  Those databases indicated that Spaulding's address in McRae had not changed since 2002.  Id. at 47.  Agent Donohoe also obtained Spaulding's driver's license through the Georgia Department of Motor Vehicles but it only listed a post office box as his address.  Id.  The FBI conducted "mail covers" in 2004 and 2006 where the front covers of all mail sent to various

4

addresses associated with Spaulding were copied and forwarded to the FBI. Id. at 48, 51, 71-72. Moreover, Agent Donohoe subpoenaed phone records to ascertain a phone number for Spaulding and placed his name in the NCIC database, a national computer system that would alert police officers to Spaulding's outstanding arrest warrant. Id. at 49, 52. He continued to run Spaulding's name through computer databases at least twice a year. Id. at 67. Although Agent Donohoe obtained records for Spaulding's 1999 conviction for aggravated assault, he did not contact Spaulding's probation officer because he determined that Spaulding had been released early from probation in February 2001.[1] R3 at 62-64.

In October 2007, a DeKalb County police officer arrested Spaulding for failing to yield to a pedestrian. Id. at 86-87. After Spaulding was fingerprinted, authorities discovered he had an outstanding arrest warrant. Id. at 87. Spaulding told police he was living in Decatur, Georgia. Id. at 82. The police called the residence and learned that Spaulding had been living there sporadically for the last five years with his mother and grandmother. Id. at 83. The car that Spaulding was driving was registered to his wife, Kelly Melvin, whom Spaulding had married in November 2002. Id. at 77-78, 80, 87-88.

The district court denied Spaulding's motion to dismiss the indictment. R1-

---

[1]Court records indicate that Spaulding's probation ended in February 2004, however. R4-34.

31 at 5. The court found there was no presumption of prejudice and that Spaulding had not shown actual prejudice. Id. A jury convicted Spaulding on all charges and he was sentenced to a total of 181 months of imprisonment and five years of supervised release. R1-72 at 1-3. This appeal followed.

## II. DISCUSSION

"Determination of whether a defendant's constitutional right to a speedy trial has been violated is a mixed question of law and fact." United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006) (quotation marks and citation omitted). We review the district court's legal conclusions de novo and its factual findings for clear error. See id.

A defendant's Sixth Amendment right to a speedy trial cannot be quantified into a specific number of days or months. See Vermont v. Brillon, ___ U.S. ___, ___ S. Ct. ___, No. 08-88, 2009 WL 578642, at *6 (U.S. Mar. 9, 2009). The right must be evaluated under the particular circumstances of each case using a balancing test which weighs the conduct of both the government and the defendant. See id. Relevant factors include the "'[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" Id. (quoting Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972)). The defendant must prove actual prejudice unless the first three factors all weigh

heavily against the government. See Ingram, 446 F.3d at 1336.

We first evaluate the length of the delay between the date of the indictment and the trial date. See id. at 1337 n.3. Any delay beyond one year is "presumptively prejudicial" and triggers further analysis under the Barker test. See id. at 1336 (quotation marks and citation omitted). The district court correctly found, and the government concedes, that the length of the four-year, eight-month delay weighs in Spaulding's favor and warrants consideration of the remaining factors.

Spaulding maintains that the district court erred in concluding that the reason for the delay, the second Barker factor, only weighed slightly in his favor. Spaulding agrees with the district court's finding that he did not actively evade apprehension. He contends that government agents were not diligent in searching for him, however, because: (1) they did not contact his mother, grandmother, or probation officer; (2) they did not check tax records using his social security number, which would have revealed his employment with an auto dealership in Decatur, Georgia and his Decatur address[2]; (3) they did not investigate whether he was married or contact his wife; and (4) they did not search the internet, which

_____

[2]Although Spaulding apparently did not file any income tax returns from 2002 to 2007, his employer filed 1099 forms in 2004 and 2005 that listed Spaulding as an employee and listed Spaulding's Decatur address. R4 at 15-16, 37-38.

would have shown that Spaulding had been fighting professionally under the name of "Carlton Spaulding" in Atlanta since December 2004 (R4-45).

The government bears the burden of explaining the reason for the delay. See Ingram, 446 F.3d at 1337. Invalid reasons include "[g]overnment actions which are tangential, frivolous, dilatory, or taken in bad faith." United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997) (citation omitted). For example, the government may not deliberately delay a trial in order to weaken a defendant's case. See Barker, 407 U.S. at 531, 92 S. Ct. at 2192. On the other hand, a missing witness is a valid reason justifying a delay. See id., 92 S. Ct. at 2192. Where the missing individual is the defendant, "the government is not required to exhaust all conceivable avenues" in finding him. United States v. Bagga, 782 F.2d 1541, 1543 (11th Cir. 1986). The Sixth Amendment mandates only a "diligent, good-faith effort" on behalf of the government to find the defendant and bring him to trial. Id. (quotation marks and citation omitted). Accordingly, if the government pursues a missing defendant with reasonable diligence from his indictment to his arrest, then no speedy trial violation exists. See Doggett v. United States, 505 U.S. 647, 656, 112 S. Ct. 2686, 2693 (1992). This conclusion generally holds no matter how great the delay, so long as the defendant cannot show specific prejudice to his defense. See id., 112 S. Ct. at 2693.

8

Government negligence falls somewhere in between diligent prosecution and bad faith delay.  See id. at 656-57, 112 S. Ct. at 2693.  Negligence is a "more neutral reason" that counts less heavily against the government.  See Barker, 407 U.S. at 531, 92 S. Ct. at 2192.  The longer the delay, the more heavily the government's negligence weighs against it.  See Doggett, 505 U.S. at 657-58, 112 S. Ct. at 2693-94 (concluding that eight-and-a-half year delay between indictment and trial, six years of which was attributable to the government's negligence, violated defendant's speedy trial right).  If the defendant is free and residing outside the jurisdiction where the indictment was returned, however, the government's negligence "does not necessarily tip the scale" in the defendant's favor.  Bagga, 782 F.2d at 1543.

The record supports the district court's finding that the government's actions lay "in the middle ground between diligence and bad faith; but closer to diligence than bad faith."  R1-31 at 4.  The evidence established that government agents consulted with law enforcement agencies in Georgia and Florida; enlisted the help of Spalding's father; searched public and law enforcement databases; surveilled suspected residences; interviewed witnesses and showed them photographs of Spalding; monitored mail sent to relatives; subpoenaed telephone records; contacted the Georgia Department of Motor Vehicles; utilized the NCIC database;

9

and attempted to lure Spaulding back to Florida after his arrest. Based on this evidence, the district court found that "the [g]overnment continued to periodically monitor the situation in an effort to locate Spaulding" and "consistently pursued Spaulding from indictment to arrest." Id. The district court also found "no evidence that the government intentionally held back its prosecution to gain some impermissible advantage at trial." Id. As for the seven-month delay in indicting Spaulding, the district court likewise found that no bad faith had been shown because the government was protecting on-going investigations involving the undercover agent. Id. at 5. None of these findings are clearly erroneous.

It is true the government may have been able to do more. Yet its failure to do so was not egregious given its continuous, good-faith efforts to locate Spaulding coupled with the fact that Spaulding was living in a different state than where the indictment was returned. Thus, although the post-indictment delay here was longer than the two-year delay in Ingram, the government's concerted efforts to locate Spaulding greatly exceeded the "less than weak" attempts of the single law enforcement agent pursuing Ingram. Ingram, 446 F.3d at 1339-40 (concluding that the government's negligence weighed heavily against it where the arresting agent knew where the defendant lived and worked, failed to contact his brother who was a policeman, and did not refer the case to any other law enforcement

10

agency).[3]  We therefore conclude that the second factor does not weigh heavily against the government.

The third factor is the defendant's assertion of his right to a speedy trial. See id. at 1336.  If the defendant knew of the indictment years before his arrest but waited until he was arrested to invoke his right to a speedy trial, then this factor weighs heavily against him.  See Doggett, 505 U.S. at 653, 112 S. Ct. at 2691. However, if the defendant did not learn about the indictment until his arrest, and afterwards promptly asserted his speedy trial right, then this factor weighs heavily against the government.  See Ingram, 446 F.3d at 1335, 1340.

The district court found that Spaulding invoked his speedy trial right within a month of his initial appearance.  R1-31 at 4.  Nevertheless, the district court concluded that this factor did not weigh heavily in his favor because Spaulding knew of the possible criminal charges before his 2007 arrest.  Id.  Spaulding disputes this finding as clearly erroneous.  He emphasizes that the indictment remained sealed until after his 2007 arrest, and insists that he was never informed that he would be charged or that there were pending charges against him when he was released in September 2002.

We need not determine whether the district court clearly erred in finding that

_____

[3]The two-year post-indictment delay also weighed more heavily against the government in Ingram because of the added two-and-a-half-year pre-indictment delay.  See id. at 1339.

11

Spaulding knew of the possible criminal charges. Even assuming that Spaulding is correct and that the third factor weighed heavily in his favor, Spaulding would still be required to show actual prejudice because the reason for the delay did not weigh heavily against the government. See Ingram, 446 F.3d at 1336 (noting that only if "all three of these factors weigh heavily against the Government, the defendant need not show actual prejudice"); see also Schlei, 122 F.3d at 988 (concluding that the defendant must establish actual prejudice because the reasons for the delay weighed in the government's favor).

In order to prove actual prejudice, the accused must demonstrate one of the following: (1) oppressive pretrial incarceration, (2) anxiety and concern, or (3) possible impairment of his defense. See Barker, 407 U.S. at 532, 92 S. Ct. at 2193. Spaulding contends that only the third element, his ability to prepare his case, was affected by the delay. Prejudice may be shown where a witness dies, disappears, or is unable to recall distant events. See id., 92 S. Ct. at 2193. On the other hand, a defendant must proffer more than "conclusory assertions of prejudice" or "unsubstantiated allegations of witnesses' faded memories." United States v. Hayes, 40 F.3d 362, 366 (11th Cir. 1994).

No actual prejudice has been shown here. Spaulding submits the delay hampered his entrapment defense because he could not properly investigate

12

whether two drug dealers, Shanahan and Jose "Primo" Castillo, influenced him to commit the crimes. Yet Spaulding did not call these (or any) individuals as witnesses at trial. R11 at 86. Nor does he claim that they were unavailable to testify or that their memories had faded. It is also unclear how these drug dealers could have supported an entrapment defense given that neither men were working for the government or were aware of the undercover agent's identity. See United States v. Padron, 527 F.3d 1156, 1160 (11th Cir. 2008) (noting that a successful entrapment defense requires both government inducement of the crime and the defendant's lack of predisposition). In any event, the jury heard the tape recordings of the September 2002 drug transaction as well as previous conversations leading up to that incident. Spaulding's bare assertion of prejudice, without more, is insufficient to establish actual prejudice. Accordingly, his claim of a speedy trial violation fails. The district court properly denied his motion to dismiss the indictment on this basis.

## III. CONCLUSION

The record in this case does not establish that Spaulding was deprived of his Sixth Amendment right to a speedy trial. Although there was a substantial pre-trial delay, the government made numerous efforts to locate Spaulding in good faith. The reason for the delay thus did not weigh heavily against the government.

13

Furthermore, Spaulding failed to produce any evidence that the delay impaired his defense. In the absence of any evidence showing actual prejudice, the district court correctly concluded that Spaulding's speedy trial right was not violated and denied his motion to dismiss the indictment. Finding no error, we AFFIRM Spaulding's convictions.

**AFFIRMED.**