[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 19-12708

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

MICHAEL STAPLETON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:14-cr-80151-DMM-1

_____

Before NEWSOM and MARCUS, Circuit Judges, and COVINGTON,* District Judge.

NEWSOM, Circuit Judge:

Michael Stapleton appeals his conviction on 47 counts related to his role in smuggling aliens into the United States. Stapleton raises five discrete issues on appeal: (1) whether the Government's delay in securing his extradition violated his constitutional right to a speedy trial; (2) whether the indictment was multiplicitous and insufficiently specific; (3) whether the district court erroneously admitted evidence of an uncharged alien-smuggling venture and his sexual abuse of migrants; (4) whether the evidence was insufficient to convict on a charge of smuggling an alien previously convicted of an aggravated felony; and (5) whether the district court erred in applying sentencing enhancements because the Government didn't offer credible testimony supporting them. After careful review and with the benefit of oral argument, we affirm.

## I

Michael Stapleton was accused of being a "coyote" who ran an alien-smuggling operation out of the Bahamas. The Government charged him with 47 counts related to two alien-smuggling conspiracies involving migrant landings that occurred in South Florida in December 2012 and October 2013. Counts 1 and 2 of the

---

* Honorable Virginia Covington, United States District Judge for the Middle District of Florida, sitting by designation.

indictment each charged a conspiracy to encourage or induce an alien to enter the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (v)(I).  Counts 3 through 24 charged separate counts of encouraging and inducing various aliens to enter the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(iv) and (v)(II). Counts 25 through 46 charged separate counts of bringing or attempting to bring an alien into the United States for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii).  Count 47 charged Stapleton with aiding and assisting an inadmissible alien who had been convicted of an aggravated felony in entering the United States, in violation of 8 U.S.C. § 1327.

The indictment was filed on September 4, 2014, but Stapleton wasn't arrested until after the Government managed to secure his extradition when he traveled from Jamaica to Germany in May 2018.  In the intervening years, the Government had explored the possibility of extraditing Stapleton from the Bahamas or Jamaica but hadn't done so because those countries would have required first-person affidavits from every alien named in Stapleton's indictment—a tall order after those 33 individuals had dispersed to locations inside and outside the United States.  Stapleton made his first appearance in district court in July 2018.

Stapleton moved to dismiss the indictment on several grounds, including that the indictment impermissibly charged two conspiracy counts for a single conspiracy, that those counts didn't identify his co-conspirators, and that the indictment didn't specify which section of the aiding-and-abetting statute was relevant to

him.  The district court denied Stapleton's motions.  Stapleton also filed a motion to dismiss the indictment on speedy-trial grounds, which was denied because the court found that the reason for delay didn't weigh heavily against the Government.  This meant that Stapleton was required to prove actual prejudice, which he wasn't able to do.

Two facts about the resulting trial are relevant to this appeal.  First, the district court ruled that the Government could present evidence of an uncharged alien-smuggling conspiracy that took place in September 2013 because it was relevant to Stapleton's intent and plan.  Second, during the trial, the Government elicited testimony from two women, Pacheco and Souza, that Stapleton "abused" them, but avoided mentioning *sexual* assault in accordance with the district court's instructions.  Stapleton, representing himself, didn't object to this questioning. *See* Doc. 216 at 68.  Stapleton himself mentioned sexual assault when he questioned Pacheco and Souza—leading to their testimony that he had, in fact, sexually assaulted them.  *See* Doc. 217 at 76, 79–80.  The jury convicted Stapleton of all 47 counts.

At sentencing, as relevant to this appeal, the district court applied a four-level enhancement for serious bodily injury after finding that Stapleton forced Pacheco to have sex several times and a two-level enhancement for possessing a firearm in connection with his offenses.  The district court's findings were based on testimony given at sentencing by Pacheco and by a passenger during the September 2013 smuggling, Acevedo-Bedoya, who had

observed Stapleton with a firearm—testimony that the court found to be credible.  The court sentenced Stapleton to a below-guideline sentence of 262 months.

Stapleton appealed, raising five discrete arguments.  We address each in turn.

## II

## A

First, Stapleton argues that the Government's delay in securing his extradition violated his constitutional right to a speedy trial —and therefore, that his indictment should have been dismissed. We disagree.[1]

We assess whether a defendant's Sixth Amendment right to a speedy trial was violated by considering four factors: "[1] Length of delay, [2] the reason for the delay, [3] the defendant's assertion of his right, and [4] prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  The defendant "must demonstrate actual prejudice unless each of the first three factors weighs heavily against the government." *United States v. Machado*, 886 F.3d 1070, 1081 (11th Cir. 2018) (cleaned up).  Here, Stapleton has waived any argument that he suffered actual prejudice by failing to argue as

---

[1] "Whether the government deprived a defendant of his constitutional right to a speedy trial presents a mixed question of law and fact.  We review the district court's legal conclusions de novo, and we review its factual findings for clear error." *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010) (citation omitted).

6                    Opinion of the Court                    19-12708

much and instead relying on the contention that the first three *Barker* factors weigh heavily against the Government. *See* Initial Br. of Appellant at 32–33.

Both parties agree that the first factor, length of delay, weighs against the Government: The delay of almost four years triggers the *Barker* speedy-trial analysis. *See* Br. of Appellee at 31–32; *United States v. Oliva*, 909 F.3d 1292, 1298 (11th Cir. 2018) (per curiam). But the length of delay doesn't weigh *heavily* against the Government unless the *reason* for the delay also weighs against the Government. *Oliva*, 909 F.3d at 1302. Bad-faith reasons—like an "intentional attempt to delay trial in order to hinder the defense"— weigh heavily against the Government, whereas a valid excuse, like a missing witness, "justifies reasonable delay." *Id.* at 1301. When the Government's "negligence" is the reason for delay, "[o]ur toleration of negligence varies inversely with the length of the delay that the negligence causes." *Id.* at 1302 (quotation marks omitted).

The district court didn't clearly err in finding that the Government acted "reasonably and diligently" in attempting to secure Stapleton's extradition to the United States; the reason for the delay wasn't bad faith or negligence. *See* Doc. 71 at 14–16. It wasn't clear error for the court to conclude (1) that the Bahamas and Jamaica— the countries where Stapleton resided during the period between his indictment and extradition—both impose the onerous requirement of obtaining first-person affidavits from all the aliens involved in a charged alien-smuggling offense before extraditing someone, and (2) that the 33 aliens involved in Stapleton's case had arrived in

the United States and "scattered[ed] to the winds" before Stapleton was indicted.  *Id.*  Given these facts, the Government wasn't required to "jeopardize its case" or "jettison some of the counts in the Indictments" by seeking to extradite Stapleton with just the subset of affidavits that it would have been able to obtain.  *Id.* at 15–16.  And as soon as the Government learned in 2018 that Stapleton planned to travel to Germany—a country with less demanding extradition requirements—it secured an Interpol "red notice" that enabled Stapleton's arrest and extradition.  *Id.* at 8.  So, the district court's finding that the Government acted diligently and in good faith wasn't clearly erroneous.  *See United States v. Bagga*, 782 F.2d 1541, 1544 (11th Cir. 1986) (applying clear-error standard to district court's factual determination that the government made a diligent, good-faith effort to arrest the defendant); *Machado*, 886 F.3d at 1081 & n.10 (holding that district court's finding of good faith and diligence wasn't clearly erroneous even though the government made no effort to extradite the defendant from Brazil for five years).  "[B]ecause the government at a minimum acted in good faith, any alleged failure to more diligently pursue [Stapleton] should not weigh heavily against the government."  *Machado*, 886 F.3d at 1081 n.11.[2]

---

[2] Another reason that this factor doesn't weigh heavily against the Government is that Stapleton remained at liberty in the Bahamas and Jamaica during the years when the Government was evaluating its options for extradition.  *See Bagga*, 782 F.2d at 1544 (noting that even the Government's negligence wouldn't "tip the scale in favor of the defendant" given that "the defendant

8                    Opinion of the Court                 19-12708

Because Stapleton can't establish that all of the first three *Barker* factors weigh heavily against the Government, and he hasn't argued actual prejudice, his speedy-trial claim fails.

## B

Second, Stapleton argues that his indictment was fatally deficient because (i) it was multiplicitous and (ii) it wasn't sufficiently specific. Neither argument succeeds.[3]

### i

Stapleton's indictment wasn't impermissibly multiplicitous in violation of the Double Jeopardy Clause. "An indictment is multiplicitous if it charges a single offense in more than one count. A multiplicitous indictment violates double jeopardy principles by giving the jury more than one opportunity to convict the defendant for the same offense." *United States v. Davis*, 854 F.3d 1276, 1286 (11th Cir. 2017) (quotation marks and citations omitted).

While Counts 1 and 2 both charged a violation of the same statute and subsections—conspiracy to encourage or induce an

_____

was at liberty and outside the jurisdiction where the indictment was returned").

[3] "We review the sufficiency of an indictment de novo." *United States v. Leonard*, 4 F.4th 1134, 1141 (11th Cir. 2021), *cert. denied* __ S. Ct. __ (2022). "Although we review multiplicity rulings for an abuse of discretion, we actually conduct a legal analysis of the appellant's double jeopardy arguments which is essentially *de novo*." *United States v. Ford*, 784 F.3d 1386, 1392 (11th Cir. 2015) (cleaned up).

alien to enter the United States—they properly charged two different conspiracies rather than a single conspiracy continuing over time. We consider five factors to determine whether a defendant committed two separate conspiracies or only one: "(1) time, (2) persons acting as co-conspirators, (3) the statutory offenses charged in the indictments, (4) the overt acts charged by the government . . . which indicate[] the nature and scope of the activity which the government sought to punish in each case, and (5) places where the events alleged as part of the conspiracy took place." *United States v. Votrobek*, 847 F.3d 1335, 1340 (11th Cir. 2017) (quotation marks omitted). Here, the same statutory offense was charged for both conspiracy counts, but "this factor is not controlling" because "it is possible to have two different conspiracies to commit exactly the same kind of crime." *Id.* at 1341 (quotation marks omitted). The other four factors weigh in favor of finding that Stapleton was involved in multiple conspiracies. The two conspiracies occurred ten months apart, in December 2012 and October 2013. *See id.* at 1340 (finding temporal gap of one month sufficient to indicate the "end of one conspiracy and the beginning of another"). Different persons acted as co-conspirators, including different captains for the boats involved in the migrant landings. Different overt acts marked the conspiracies—different boats, stash houses, and groups of aliens. And at least some of "the conspiratorial events occurred in separate places," *Votrobek*, 847 F.3d at 1341 (quotation marks omitted), with the migrant landings occurring at different locations in Florida. Based on these factors, the

Government has carried its burden of "proving a separate conspiracy by a preponderance of the evidence." *Id.* at 1340.

Nor was the indictment multiplicitous because it charged three different counts (Counts 10, 32, and 47) for the same "offense." *See* Initial Br. of Appellant at 44. "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." *Davis*, 854 F.3d at 1286. "If the legislative intent is unclear, we apply the 'same elements' test set forth in *Blockburger v. United States*," 284 U.S. 299 (1932). *Davis*, 854 F.3d at 1286. Under *Blockburger*, charging multiple counts for the same conduct doesn't violate the Double Jeopardy Clause so long as "'each provision requires proof of a fact which the other does not.'" *United States v. Cannon*, 987 F.3d 924, 940 (11th Cir.) (quoting *Blockburger*, 284 U.S. at 304), *cert. denied*, 142 S. Ct. 283 (2021).

We conclude that Counts 10, 32, and 47 satisfy the *Blockburger* test.[4]   Count 10 charged a violation of 8 U.S.C. § 1324(a)(1)(A)(iv), which criminalizes "encourag[ing] or induc[ing] an alien" to enter the United States while "knowing or in reckless disregard" of the fact that the alien's coming to the United

---

[4] As in *Cannon*, "[n]either [Stapleton] nor the government identifies anything in the [immigration] statutes or their legislative histories that speaks to Congress's intent to authorize separate and cumulative punishments," so we "therefore compare the elements of the [three] offenses." 987 F.3d at 940.

States is "in violation of law."  Count 32 charged a violation of 8 U.S.C. § 1324(a)(2)(B)(ii), which criminalizes "bring[ing] or attempt[ing] to bring to the United States" an alien "for the purpose of commercial advantage or private financial gain," while "knowing or in reckless disregard of the fact that" the alien "has not received prior official authorization to come to, enter, or reside in the United States."  Count 47 charged a violation of 8 U.S.C. § 1327, which criminalizes "knowingly aid[ing] or assist[ing]" certain types of "inadmissible" aliens, including those convicted of aggravated felonies, to enter the United States.

It's clear from the face of these statutes that Counts 32 and 47 both require proof of a unique element that the other counts don't:  Count 32 requires the defendant to have the purpose of financial gain, and Count 47 requires proof of the fact that the alien was inadmissible because of an aggravated felony conviction.

Count 10—the violation of § 1324(a)(1)(A)(iv)—also requires proof of an element that the other counts don't: the mens rea of knowledge or reckless disregard for the fact "that the alien's coming to the United States is *in violation of law.*"  *United States v. Lopez*, 590 F.3d 1238, 1250 (11th Cir. 2009) (emphasis added); *see* Supp. Br. of Appellee at 3–6.[5]  This mens rea is a unique element

---

[5] In *Lopez*, we upheld jury instructions that defined "encourage" in § 1324(a)(1)(A)(iv) as including "to help."  590 F.3d at 1249.  And as the dissenting judge in that case pointed out, including mere "helping" within the definition of "encourage" threatens to make subsection (a)(2) of the statute—which includes bringing or attempting to bring aliens to the United States—

because it isn't automatically satisfied whenever a defendant knows that the alien hasn't received "prior official authorization" to enter the United States (as is required for violations of § 1324(a)(2)(B)(ii)) or when the defendant knows the alien is "inadmissible" (as is required for violations of § 1327). Rather, an alien can come to the United States without "prior official authorization" *without* being in "violation of law." Supp. Br. of Appellee at 8. For example, "a noncitizen national of a country in the visa waiver program may seek admission as a nonimmigrant visitor for 90 days or less without a visa, grant of advance parole, or other travel document"; prior authorization isn't required if the alien arrives at a land-border port of entry. *Id.* at 8–9 (citing 8 U.S.C. § 1187(a)(1)–(2) and 8 C.F.R. §§ 217.5(b)(2); 217.2(c)(2)). Thus, a defendant could violate § 1324(a)(2)(B)(ii) by bringing such an alien to the United States for financial gain without violating § 1324(a)(1)(A)(iv). Similarly, an alien can be "inadmissible" (as required for a violation of § 1327) without his entry being in "violation of law": Certain classes of aliens can obtain waivers of inadmissibility and be granted entry into the United States. *Id.* at 13 n.3

---

redundant. *Id.* at 1259 (Barkett, J., concurring in part and dissenting in part). Given *Lopez*, § 1324(a)(1)(A)(iv) doesn't seem to require any *act* that § 1324(a)(2)(B)(ii) and § 1327 don't: Every time someone brings or attempts to bring an alien to the United States or aids or assist him in entering the United States, he also helps ("encourages") that person to enter the United States. But after we sought supplemental briefing on this issue, the Government explained how even if § 1324(a)(1)(A)(iv) can be violated by the same *act* as the other subsections, it requires a unique *mens rea.*

(citing 8 U.S.C. § 1182(d)(3), (13)–(14)).  Therefore, a defendant could violate § 1327 but not § 1324(a)(1)(A)(iv) by bringing an inadmissible alien to the United States while "believing his entry would be lawful because he expected him to apply for a waiver of inadmissibility at a port of entry." *Id.* at 13.

Because Counts 10, 32, and 47 charged crimes that all require a unique element of proof, they're not multiplicitous.

### ii

Nor was Stapleton's indictment insufficiently specific. While Stapleton cites a district court case for the proposition that an indictment charging conspiracy must specifically identify the defendant's alleged co-conspirators, that's contrary to our precedent: "[A] conspiracy indictment and a conspiracy charge to a jury may properly refer to unidentified co-conspirators." *United States v. Trujillo*, 714 F.2d 102, 105 n.1 (11th Cir. 1983); *see also United States v. Martinez*, 96 F.3d 473, 477 (11th Cir. 1996) (per curiam).

Stapleton's separate argument that the indictment was insufficient because it didn't specify who he was "aiding and abetting" also fails.[6]  Stapleton wasn't charged with "aiding and

---

[6] We review this issue only for plain error because Stapleton failed to raise it before the district court. *See United States v. Rodriguez*, 398 F.3d 1291, 1298 (11th Cir. 2005); Doc. 33 at 5–6 (arguing only that the indictment was insufficient because it failed to specify which subsection of 18 U.S.C. § 2 Stapleton was charged with violating, *not* because it didn't specify who Stapleton aided or abetted).

14                    Opinion of the Court                    19-12708

abetting" the immigrant-smuggling offenses in the indictment; he was charged with the *substantive* offenses—violations of 8 U.S.C. §§ 1324(a)(1)(A)(iv), 1324(a)(2)(B)(ii), and 1327. To be sure, the indictment also referenced 18 U.S.C. § 2, which states that those who commit offenses against the United States, aid or abet those offenses, or willfully cause the commission of those offenses all shall be punishable as principals. *See* Doc. 1 at 2–5. But the indictment makes clear that Stapleton was charged with the substantive offenses because he personally committed them, not because he aided and abetted their commission: Counts 3 through 24 allege that Stapleton "did knowingly encourage and induce an alien" to enter the United States; Counts 25 through 46 allege that he "did knowingly bring and attempt to bring, an alien" for financial gain; and Count 47 alleges that he "did knowingly aid and assist an alien" who had been convicted of an aggravated felony to enter the United States. *Id.* Therefore, the indictment didn't need to specify a principal whom Stapleton aided and abetted in committing the substantive offenses in Counts 3 through 47 because the indictment charged him with committing those offenses himself.[7]

---

[7] Nor does it matter if an alien cannot be the principal that one aids and abets to commit these offenses; the substantive offense itself is aiding the alien in entering the United States. The out-of-circuit cases that Stapleton cites are inapposite. In *Garcia-Paulin*, for instance, the Fifth Circuit considered a defendant's conviction for bringing or attempting to bring an inadmissible alien to the United States, but in that case the defendant hadn't done anything to actually bring the alien to the United States; he had only supplied the alien with a fraudulent passport stamp. *United States v. Garcia-Paulin*, 627 F.3d 127,

## C

The district court didn't plainly err in admitting evidence of Stapleton's abuse of migrant women and evidence of an uncharged alien-smuggling conspiracy.[8]

First, the abuse. We will consider only whether the district court erred in admitting the evidence about "abuse" generally—which the Government elicited—rather than in admitting evidence about *sexual* abuse—which Stapleton himself elicited. *See* Doc. 278 at 11. Because Stapleton invited any error in admitting the *sexual*-abuse evidence (and of course didn't object to his own questioning), he can't challenge it on appeal. *See United States v. Silvestri*, 409 F.3d 1311, 1327 (11th Cir. 2005). And because Stapleton didn't object to the Government's questioning, *see* Doc. 216 at 68, we review the district court's admission of the abuse evidence only for plain error, *United States v. Deverso*, 518 F.3d 1250, 1254 (11th Cir. 2008).

It wasn't error—much less plain error—for the district court to admit evidence of Stapleton's abuse of migrant women

---

133 (5th Cir. 2010). The Fifth Circuit held that the defendant likewise couldn't have been guilty of aiding and abetting the offense because there was no principal that the defendant helped to bring the alien to the United States; the alien himself couldn't be the principal. *Id.* Stapleton, by contrast, *was* the principal.

[8] "We review for abuse of discretion the district court's admission of evidence. If the defendant fails to object at trial to the admission of evidence, the court reviews the district court's ruling for plain error only." *United States v. Deverso*, 518 F.3d 1250, 1254 (11th Cir. 2008) (citation omitted).

notwithstanding Federal Rule of Evidence 403, which states that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."[9]  "Rule 403 is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011) (quotation marks omitted).  Here, Stapleton's abuse of the migrants was probative of his intent to smuggle them into the United States: While Stapleton argued at trial that he was housing the migrants for innocuous reasons—placing his intent at issue—the fact that he repeatedly abused them with seeming impunity had probative value because it suggested that he knew the migrants were at his mercy given that they were depending on him to smuggle them to the United States.  And on the other side of the ledger, evidence of unspecified, generic "abuse" isn't as prejudicial as evidence of *sexual* abuse.  So, at the very least, it isn't "plain" that the probative value of the abuse testimony was substantially outweighed by its prejudicial effect.  *Cf. United States v. Saintil*, 753 F.2d 984, 987–89 (11th Cir. 1985) (finding no abuse of discretion where the court admitted evidence of murder and extortion of sexual favors from

---

[9] Because the abuse here "arose out of the same transaction or series of transactions as the charged offense[s]," it is not considered "extrinsic evidence" and therefore "Rule 404(b) is not applicable." *United States v. Saintil*, 753 F.2d 984, 987–88 (11th Cir. 1985).

migrants for the purpose of proving the defendant's control over a vessel).

Next, the uncharged alien-smuggling conspiracy. The district court didn't plainly err[10] in admitting this evidence because it didn't violate Federal Rule of Evidence 404(b) or 403. Rule 404(b) prohibits admission of evidence of uncharged acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Id. R. 404(b)(2). Here, the evidence of the uncharged conspiracy was used not to prove character but to explain Stapleton's plan and intent—his modus operandi—and to refute Stapleton's trial defense that he didn't intend to commit any crimes when he accepted money from the migrants who testified at trial. We have held that admitting evidence of an uncharged alien-smuggling offense for this purpose is proper under Rule 404(b). See, e.g., United States v. Perez, 443 F.3d 772, 779–80 (11th Cir. 2006) (holding that a prior alien-smuggling conviction "was relevant to establish his state of mind with respect to the conspiracy offense" because "[w]hen a defendant charged with conspiracy enters a plea of not guilty . . . he makes intent a material issue in the case").

---

[10] Stapleton didn't object to this evidence at trial, so we review only for plain error. See Doc. 217 at 179, 198-200, 202; Deverso, 518 F.3d at 1254.

Nor was the probative value of this evidence substantially outweighed by the danger of unfair prejudice or cumulativeness, as would implicate Rule 403. The evidence wasn't substantially more prejudicial than probative given its relevance to Stapleton's state of mind and the court's limiting instructions. *See* Doc. 217 at 170–71; *cf. Perez*, 443 F.3d at 780 (finding no abuse of discretion where district court determined probative value of prior alien-smuggling offense wasn't outweighed by prejudicial effect). It also wasn't needlessly cumulative—or at the very least, its admission wasn't plainly erroneous on this ground—because only three migrants testified about the two charged conspiracies and there's no authority suggesting that calling four witnesses to prove 47 alien-smuggling counts is needlessly cumulative.

## D

Turning to Stapleton's argument that there was insufficient evidence to convict him of Count 47—knowingly aiding the entry of an inadmissible alien who had been convicted of an aggravated felony—this claim fails under the applicable standard of review: When reviewing sufficiency-of-the-evidence claims, we "view[] the evidence in the light most favorable to the government and draw[] all reasonable inferences and credibility choices in favor of the jury's verdict." *United States v. Trujillo*, 146 F.3d 838, 845 (11th Cir. 1998). We cannot overturn the verdict "if any reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v.*

*Herrera*, 931 F.2d 761, 762 (11th Cir. 1991).  The evidence, viewed in this manner, was sufficient to support Stapleton's conviction.[11]

Stapleton argues that there wasn't sufficient evidence that the "Steve Anthony Rittie" whom he helped enter the United States was the same "Steve Rittie" who had been convicted of conspiracy to distribute more than 100 pounds of marijuana in New Mexico state court.  He argues that because the only matching information in the New Mexico documents evidencing the conviction was a first and last name and a birth year, there wasn't sufficient evidence to conclude beyond a reasonable doubt that the Steve Rittie that Stapleton smuggled was the Steve Rittie convicted of the New Mexico felony.

In our view, the jury received enough evidence to conclude that the two "Steve Rittie"s were one and the same:  The Government presented testimony from Border Patrol Agent John Solek about the documents contained in Steve Rittie's alien file, which included a warrant of removal (with Rittie's name, photograph, and fingerprint) and a formal warning for Rittie not to enter the United States because he is an aggravated felon.  *See* Docs. 224 at 23–24; 152-1 at 130–32.  Solek testified that the Government's same file on Rittie also included a certified copy of the New Mexico judgment against "Steve Rittie."  *See* Docs. 224 at 20–22; 152-1 at 127–29.  That judgment also noted that the defendant was subject to

---

[11] Moreover, because Stapleton didn't object on this ground before the district court, our review is for plain error only.

deportation to Jamaica, Doc. 152-1 at 128, which is the same country of origin listed for the Steve Rittie that Stapleton smuggled, Doc. 152-1 at 61. Because a "reasonable construction" of this evidence could have allowed the jury to find beyond a reasonable doubt that the Steve Rittie that Stapleton smuggled was an aggravated felon, sufficient evidence supported this conviction.

## E

Finally, the district court didn't err in imposing sentencing enhancements based on Stapleton's sexual assault of migrants and his possession of a firearm in relation to his offenses because the enhancements were supported by factual findings that weren't clearly erroneous.[12]

First, the serious-bodily-injury enhancement based on Stapleton's sexual assaults. *See* U.S.S.G. § 2L1.1(b)(7)(B). Given Pacheco's detailed testimony before the district court and the "special deference" that we owe to "the court's finding of witness credibility," *United States v. Hesser*, 800 F.3d 1310, 1330 (11th Cir. 2015) (per curiam), the court's conclusion that Stapleton sexually assaulted Pacheco wasn't clearly erroneous. The district court was entitled to find Pacheco credible notwithstanding her illegal entry into the United States and her pending petition to remain in the country. *Cf. United States v. George*, 872 F.3d 1197, 1205 (11th Cir.

---

[12] "We review the District Court's findings of fact at sentencing for clear error, according special deference to the court's finding of witness credibility." *United States v. Hesser*, 800 F.3d 1310, 1330 (11th Cir. 2015) (per curiam).

2017) (concluding that the district court was entitled to find witnesses credible despite their "extensive criminal histories").

Second, the dangerous-weapon enhancement. The Sentencing Guidelines impose a two-level enhancement if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2L1.1(b)(5)(C). The district court found that Stapleton possessed a firearm during the uncharged September 2013 alien-smuggling operation based on the testimony of passenger Acevedo-Bedoya, who explained that although he wasn't very familiar with firearms, he saw Stapleton carrying a handgun in his waistband similar to those carried by police. Given this testimony and the deference that we owe to the district court's credibility determinations, this finding wasn't clearly erroneous.[13] Therefore, the court properly applied the dangerous-weapon enhancement.

---

[13] Nor did the court err in imposing the enhancement even though Stapleton possessed the firearm during the uncharged September 2013 operation, which occurred between the charged December 2012 and October 2013 offenses. In applying sentencing enhancements, the court must consider all "relevant conduct," which "is broadly defined to include both uncharged and acquitted conduct that is proven at sentencing by a preponderance of the evidence," and "'all acts and omissions committed . . . by the defendant . . . that were part of the same course of conduct or *common scheme or plan* as the offense of conviction.'" *United States v. Siegelman*, 786 F.3d 1322, 1332–33 (11th Cir. 2015) (quoting U.S.S.G. § 1.B1.3(a)(1), (2) (emphasis added)). The September 2013 crossing was part of the same "common scheme or plan" to smuggle migrants to the United States as the December 2012 and October 2013 crossings because these three operations shared, at the very least, a similar modus operandi and common purpose. *See id.* at 1333 ("For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to

**AFFIRMED.**

---

each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi.*"    (quoting U.S.S.G. § 1B1.3, cmt. n.9(A))).